The GREAT WESTERN SUGAR COMPANY, Plaintiff–Appellee and Cross–Appellant,

v.

KN ENERGY, INC., (Formerly Kansas Nebraska Natural Gas Company), Defendant–Appellant and Cross–Appellee.

No. 87CA1477.

Colorado Court of Appeals, Div. II.

May 4, 1989.

Rehearing Denied July 6, 1989.

Holmes & Starr, Kenneth L. Starr and Jeffrey Reiman, Denver, and Melvin Richter, Washington, D.C., for plaintiff-appellee and cross-appellant.

Morris, Lower & Sattler, Robert L. Morris and P. Kathleen Lower, Denver, and Arnold R. Madigan, Lakewood, for defendant-appellant and cross-appellee.

FISCHBACH, Judge.

Defendant, KN Energy, Inc. (Seller), which in a prior proceeding was determined to have breached its contract with plaintiff, the Great Western Sugar Co. (Buyer), appeals the trial court's damages award. Primarily, it challenges the amount awarded

as prejudgment interest pursuant to § 5–12–102(1)(a), C.R.S. (1988 Cum.Supp.) based on Seller's "gain realized" as a result of the breach. Buyer cross-appeals the amount of prejudgment interest. We affirm.

This case arises from Seller's refusal to honor its contract to sell natural gas to Buyer at a reduced, industrial rate between the years of 1974 and 1979 inclusive. In *Great Western Sugar Co. v. Northern Natural Gas Co.*, 661 P.2d 684 (Colo.App. 1982), *aff'd*, 698 P.2d 769 (Colo.1985), *cert. denied*, 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985), we affirmed a summary judgment favoring Buyer on the issue of liability and remanded for a recalculation of damages, including prejudgment interest pursuant to § 5–12–102(1). While agreeing with the trial court that the prejudgment interest statute applied to the case, we found the court's findings "inadequate for us to determine the basis upon which it determined the 'gain or benefit realized' by [Seller] in withholding the gas." *Great Western Sugar Co. v. Northern Natural Gas Co., supra.* Without such findings, the interest award was in error.

On remand, the parties agreed that the trial court bifurcate the damages and interest issues, with damages to be determined by the jury and interest by the trial court. The jury awarded breach of contract damages in the amount of $3,613,743, which were calculated to compensate Buyer for the difference between the contract price of the gas and the price Buyer paid to secure alternative fuel. Thus, the award was compensation for the additional cost of cover. *See* § 4–2–712(2), C.R.S.

In its order regarding prejudgment interest, the trial court concluded that Buyer was entitled at its election to prejudgment interest at an annual rate of eight percent compounded annually, § 5–12–102(1)(b), C.R.S. (1988 Cum. Supp), or to an amount which would fully recognize the gain or benefit realized by Seller as a result of withholding the gas, § 5–12–102(1)(a), C.R.S. (1988 Cum.Supp.).

Buyer elected to recover the gain or benefit realized by Seller. After considering several models submitted by the parties, the trial court concluded that the Seller's gain was most accurately depicted by Buyer's gas husbanding model. While the other models defined rates of return Seller could have received as a result of withholding money, *i.e.*, the contract damages, from Buyer, the gas husbanding model was designed to show Seller's financial return resulting from withholding property, the natural gas itself. Specifically, the gas husbanding model attempts to calculate Seller's net profit up until the date of judgment resulting from its wrongful withholding of the specific amount of gas to which Buyer was entitled under the contract. This amount was determined by assuming that the gas was sold at the market price to homeowners on the date of judgment.

After accepting the gas husbanding model's estimate of $11,975,057 as a fair indication of Seller's gain or benefit, the trial court reduced this amount by the jury's award of damages for Buyer's additional cost of cover, reasoning that the damages award was a cost of Seller's retention of the gas. Accordingly, in its final judgment regarding both contract damages and interest, the trial court awarded Buyer cover damages in the amount of $3,613,743 and prejudgment interest in the amount of $8,361,314.

## I.

Seller contends that the trial court erred in accepting the gas husbanding model as accurately reflecting its gain or benefit realized from withholding the gas from Buyer. It contends that the model is legally flawed in that it assumes a sales price on the date of judgment when the gas in question will not be sold until an indefinite future date, and factually insufficient in that it ignores the regulatory method of pricing in the natural gas industry. We disagree.

The gas husbanding model of determining the gain or benefit realized by Seller as a result of withholding the gas has three components: (1) Seller's "return on rate base," (2) Seller's "excess revenues," and (3) Seller's "operating profit credit." The

first component is derived from the increased rates Seller was allowed to charge on other gas by virtue of the increased value of its property resulting from its retention of gas owed by contract to Buyer. The second component is a calculation of the difference in profit between the amount that could be earned by means of Seller's sale of the gas earmarked for Buyer to homeowners on the date of judgment or thereafter and the profit that would have been earned had the gas been sold to Buyer under the contract terms. Thus, whereas 3,407,912 thousand cubic feet (MCF) of gas was to have been sold to Buyer at prices ranging from $.469 to $1.369/MCF, it was available to sell to homeowners on the date of judgment at $4.09/MCF. The difference between those prices multiplied by the amount withheld in each year results in Seller's "excess revenue." The third component consists of the interest Seller would have earned (at the weighted average interest rate for short- and long-term borrowing) on the money Buyer would have paid had Seller honored the contract. Under the model, Seller's total benefit equals the sum of components one and two minus component three.

Seller accepts both the validity and calculation of components one and three. The bulk of the profit, however, is attributable to the second component of excess revenues, which, Seller asserts, was improperly endorsed by the trial court.

### A.

Seller first argues that the "excess revenues" component is invalid as a matter of law because the gas in question had not yet been sold on the date of judgment and Seller had therefore realized no excess revenue at that time. In addition, even if current gain can be assumed based on future sales of the gas, Seller asserts that the gain should not have been based on the market value of the gas at the time of judgment. We find these arguments contrary to both the remedial purpose of the statute and general principles of property valuation.

The applicable paragraph of the prejudgment interest statute states that interest shall be allowed in "an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs...." Section 5-12-102(1)(a). The paragraph does not amplify the meaning of "gain or benefit realized" nor suggest a means of calculation. Because of this ambiguity, we must construe the statute in light of the apparent legislative intent and purpose. *Engelbrecht v. Hartford Accident & Indemnity Co.*, 680 P.2d 231 (Colo. 1984).

The legislative history of the pertinent bill reveals that the new language was intended to correct the situation in which a wrongdoer would stall settlement or judgment in order to reap the benefit of having use of money or property which was producing more profit for him than the statutory interest rate he would eventually have to pay. Hearings on S.B. 463 before the House Business & Labor Committee, 52nd General Assembly, First Session, May 8, 1979 (statement of Sen. Cole). As a result of the legislation, any benefit resulting from the wrongful withholding was to be enjoyed not by the wrongdoer, but by the injured party.

To allow the wrongdoer to retain the benefit by timing profit realization to occur after judgment would wholly defeat this legislative purpose.

On the other hand, using the market value of the property on the date of judgment to measure "gain realized" furthers this purpose. If the wrongdoer's profit rate from withholding the money or property continues to exceed the statutory interest rate of 8%, he is encouraged to accelerate the judgment date so that he will have less to relinquish to the injured party. If his profit rate dips below 8%, the wrongdoer is likewise encouraged to accelerate the judgment date so as to avoid the higher 8% interest on the judgment and to lose as little as possible.

In addition, regardless of whether property is actually being sold, it is standard practice to value it on the date of the decree or hearing for property division in dissolution of marriage cases, § 14–10–113(5), C.R.S. (1987 Repl.Vol. 6B), and on the date of death for calculation of inheritance tax, § 39–23–142(1), C.R.S. (1982 Repl.Vol. 16B). Analogously, it was appropriate for the trial court to value the natural gas at issue here at market value on the date of judgment.

### B.

■ Seller next contends that the gas husbanding model's estimate of gain or benefit realized under its excess revenue component, which was accepted by the trial court, is unsupported by the evidence. Whereas the model assumes that the difference between the contract price of the gas and the price for which it could be sold to homeowners on or after the date of judgment was pure gain, Seller argues that evidence of the means of determining prices in the regulated natural gas industry shows that only a small portion of the price increase may be so characterized. We disagree.

Whether the excess revenues component of the gas husbanding model fairly represents Seller's potential profit from selling the gas to homeowners instead of to Buyer under the contract is a question of fact. When the evidence is conflicting, the trial court's findings of fact are conclusive, "unless they are so manifestly against the weight of the evidence as to demonstrate some oversight or mistake on the part of the trial judge." *Consolidated Oil & Gas, Inc. v. Roberts,* 162 Colo. 149, 425 P.2d 282 (1967).

Seller's argument that the model exaggerates its gain or benefit is based on the regulated nature of the natural gas industry. *See* 15 U.S.C. § 717, et seq. (1982). Seller presented testimony that, in general, natural gas prices for any given year are based on the contemporary cost of gas and operations, and that, to provide continuing public access to this valuable commodity, regulations limit gas suppliers to a reasonable profit. Although Seller presented no details at trial as to the costs on which the $4.09/MCF charge to homeowners was based, it now asserts that its evidence concerning the regulated nature of the industry was sufficient to discredit the gas husbanding model's assessment of gain. Seller concludes that because the $4.09/MCF charge must have been allowed only in response to increased costs, and because those increased costs were not included within the model, the model's calculation of the gain or benefit realized as excess revenue is necessarily overstated.

Buyer's evidence supporting the excess revenues component of the gas husbanding model includes the following: uncontroverted evidence of original cost and associated operational expenses of the gas earmarked for Buyer, uncontroverted evidence of both the contract and date of judgment homeowner sales prices of Seller's gas, admissions by Seller that it retained the gas contractually owed to Buyer in order to increase its profits by means of more lucrative sales to homeowners, and admissions by Seller that, consistent with natural gas regulations, it could essentially double its prices by halving its distribution and thereby hold on to a quantity of gas for the future.

Based on this evidence, we cannot say that the trial court's acceptance of the excess revenues component of the gas husbanding model was unsupported. Buyer presented credible evidence to support its model by means of both Seller's data and its own expert witness. Any data concerning increased costs which could have reduced the calculation of excess revenue, and thus of the prejudgment interest award based on the gas husbanding model, was peculiarly within the province of Seller. Seller failed to present it. The trial court therefore had no specifics to rely on in reducing the award and did not err in failing to do so.

### II.

■ On cross-appeal, Buyer asserts that the trial court erred in deducting the cost of cover damages awarded by the jury

from the amount of prejudgment interest due under the gas husbanding model. We disagree.

As discussed under Part I of this opinion, the legislative purpose in enacting § 5–12–102(1)(a) was to deprive the wrongdoer of any benefit gained as a result of his wrongful withholding. The chief sponsor of the bill explained that the language was designed to codify the common law doctrine of moratory interest, and he referred to the case of *Davis Cattle Co. v. Great Western Sugar Co.,* 393 F.Supp. 1165 (D.Colo.1975), *aff'd* 544 F.2d 436 (10th Cir. 1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977), to illustrate the doctrine. *See* Hearings on S.B. 463, *supra.*

Consistent with the goal of fairness underlying the common law doctrine of moratory interest, *see Robberson Steel Co. v. Harrell,* 177 F.2d 12 (10th Cir.1949); *Bankers Trust Co. v. International Trust Co.,* 108 Colo. 15, 113 P.2d 656 (1941), and with the general principle of contract law that the purpose of a damages award for breach is to put the nonbreaching party in as good a position as he would have achieved had the contract been performed, the court in *Davis Cattle* expressed its "ultimate duty [as] ... fix[ing] a rate which would adequately compensate the plaintiff." Accordingly, it awarded the plaintiffs damages for uncompensated services they had performed under their contracts with defendant, plus prejudgment interest at 11½%, the interest rate at which defendant would have borrowed in order to pay the compensation when it was due. This total award had two objects: to compensate the plaintiff adequately and to eliminate any unjust enrichment of the defendant. Nowhere did the court express a punitive intent.

Nor did the General Assembly express such intent in codifying the doctrine on moratory interest. In the absence of such expression and in light of the independent statute providing for punitive damages, § 13–21–102, C.R.S. (1987 Repl.Vol. 6A), we will not infer a legislative intent to impose punitive damages by means of the prejudgment interest statute.

The wording and legislative history of § 5–12–102(1)(a) and the commitment to fairness underlying the doctrine of moratory interest on which the amended statute was based lead us to conclude that the statute may not be used to impose double or other punitive damages. Thus, to the extent that an award made under the statute provides double compensation for the same wrong, it cannot stand. *See Westric Battery Co. v. Standard Electric Co.,* 482 F.2d 1307 (10th Cir.1973).

The question here concerns the calculation of moratory interest in the case of a seller's wrongful withholding of property by breaching a sales contract.

On a very basic level, a breaching seller's gain or benefit from withholding property is a measure of its increased profit from being able to sell the property at market price on the date of judgment rather than at the contractual price on the contractual delivery date. This profit consists of the market price at the time of breach plus subsequent market increase in the worth of the property withheld (and other profit attributable to withholding the property) until the date of judgment, minus the contract price and any interest the seller would have made on the contract price in the interim. Because the market price at the time of breach is comparable to the cover price, it can be defined as the sum of the contract price and the additional cost of cover.

The benefit can thus be expressed as: Contract price plus additional cost of cover plus subsequent profit minus a quantity consisting of the contract price plus the seller's potential interest on the contract price. In reduced form this is equivalent to: Additional cost of cover plus subsequent profit minus the seller's potential interest on contract price. As can be seen by this formula, buyer's additional cost of cover is a major component of his seller's benefit. Thus, to award a buyer the additional cost of cover as well as the entire benefit realized by the seller would be duplicative.

Here, the trial court endorsed a sophisticated version of this formula, the gas husbanding model, to calculate Seller's benefit from being able to sell the gas at

market price to homeowners on or after the judgment date rather than to Buyer under the terms of the contract. The resultant net benefit under the formula, additional cost of cover plus subsequent profit minus potential interest on contract price, was $11,975,057. Because this figure includes Buyer's additional cost of cover, it is the total amount due Buyer as cover damages plus interest. The trial court awarded exactly this amount by subtracting the jury's award for Buyer's additional cost of cover from the award of "prejudgment interest" as calculated under the gas husbanding model, and adding it back in as contractual damages.

Buyer argues that this result cannot be correct because its award would be the same regardless of the amount of damages for cover awarded by the jury. While we agree that the amount awarded by the jury was disregarded under the formula, this does not invalidate the fact that here the formula itself included an award for Buyer's additional cost of cover. The parties could have requested that the entire damages award be calculated in one proceeding by the jury. Instead, they agreed that the trial be bifurcated and that the court determine the amount of gain or benefit realized. Likewise, Buyer could have limited its presentation of models for prejudgment interest to those based on Seller's borrowing or interest rates which then could have been superimposed on the jury's damages award. Instead, among its several alternative models, Buyer presented one, the gas husbanding model, which it knew to be unrelated to the jury's determination of damages. That model was fully endorsed by the trial court. Buyer may not now complain of the result.

Because of the above disposition of the case, we need not reach the parties' remaining allegations of error.

Judgment affirmed.

SMITH and STERNBERG, JJ., concur.