DORIS E. STANSBURY, TRANSFEREE, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

LELAND D. STANSBURY, TRANSFEREE, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket Nos. 7025–92, 7026–92.          Filed April 18, 1995.

*Randall M. Willard,* for petitioners.

*Bruce A. Anderson, Cynthia J. Olson,* and *Thomas J. Kane,* for respondent.

GERBER, *Judge:* Respondent, by means of separate notices of transferee liability, determined that petitioners Doris E. Stansbury and Leland D. Stansbury are liable as transferees of property from ABC Real Estate, Inc. (hereinafter referred to as ABC or transferor), for the following deficiencies in income tax and additions to tax:[1]

|      |            | Additions to tax | | | | |
|------|------------|-----------------|----------|----------|----------|----------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a) | Sec. 6655 | Sec. 6661(a) | Accrued interest |
| 1980 | $7,227     | $1,806.75       | $361.35  | $418.65  | - - -    | $18,305.60 |
| 1981 | 11,490     | 2,872.50        | 574.50   | 749.95   | - - -    | 25,339.66 |
| 1982 | 5,330      | 1,332.50        | 266.50   | 478.28   | - - -    | 9,173.02  |
| 1983 | 14,996     | 3,749.00        | 749.80   | 934.83   | $1,500   | 23,119.19 |
| 1984 | 2,741      | 685.25          | 137.05   | - - -    | - - -    | 3,186.49  |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years involved herein, and all Rule references are to this Court's Rules of Practice and Procedure.

Respondent also determined that petitioners' liability as transferees is limited to the value of the assets received from ABC plus interest applicable thereon.

The parties have agreed that petitioners are liable as transferees, that the values of the assets transferred to Mrs. Stansbury and Mr. Stansbury were $50,000 and $25,000, respectively, and that these amounts are less than the tax liability of the transferor. On brief, petitioners have conceded that they are liable for interest pursuant to section 6601 from the date of the notices of transferee liability. The remaining issue is whether petitioners are liable for interest for the period prior to the issuance of the notices of transferee liability.

---

[1] Respondent determined that Mr. Stansbury was liable as transferee only for the deficiencies and additions to tax for the years 1980 and 1981.

## FINDINGS OF FACT[2]

Petitioners, who were married at all relevant times, resided in Fort Collins, Colorado, at the time their petitions were filed. ABC was incorporated under the laws of the State of Colorado on or about October 10, 1973, for the purpose of purchasing and selling real estate. Petitioners owned 100 percent of ABC's stock. Mr. Stansbury and Mrs. Stansbury were president and secretary-treasurer of ABC, respectively, and they also served, along with Victoria Hays, as directors of the company.

Petitioners conducted real estate activities by and through ABC from at least 1973, including the purchase, on or about December 20, 1973, of 47 residential lots known as the Pleasant Acres subdivision in Larimer County, Fort Collins, Colorado.

On or about November 1981, the Internal Revenue Service (IRS) commenced an examination of ABC's 1979 through 1981 taxable years. No returns had been filed for 1979, 1980, or 1981. The examination of ABC was later expanded to include the taxable years 1982 through 1984.

Sometime prior to March 1986, as a result of its continuing investigation of ABC, the IRS determined that ABC was liable for income tax deficiencies and additions to tax for the years 1980 through 1984. In March 1986, ABC, through its president Mr. Stansbury, agreed to the assessment and collection of tax and penalties determined by the IRS by executing Forms 4549 for the years 1980 through 1984, as follows:

| Year | Adjustment to tax | Penalties |
|------|-------------------|-----------|
| 1980 | $7,227 | $2,586.75 |
| 1981 | 11,490 | 4,196.95 |
| 1982 | 5,330 | 2,077.28 |
| 1983 | 14,996 | 6,933.63 |
| 1984 | 2,741 | 685.25 |

The liabilities set forth in the Forms 4549 were assessed on June 30, 1986; however, payments by ABC were not forthcoming. On or about October 20, 1986, still having failed to make payments to the IRS on its agreed tax liabilities, ABC, through its president Mr. Stansbury, made the following

---

[2] The stipulation of facts and accompanying exhibits are incorporated by this reference.

transfers of residential property from the company's remaining holdings in the Pleasant Acres subdivision:

| Property location | Transferee(s) |
| --- | --- |
| 604 Riverbend Dr. | Doris E. Stansbury |
| 713 Riverbend Dr. | Leland D. Stansbury/ Doris E. Stansbury |
| 716 Riverbend Dr. | Doris E. Stansbury |
| 713 Rene Dr. | Doris E. Stansbury |
| 736 Rene Dr. | Doris E. Stansbury |
| 737 Rene Dr. | Betty M. Stansbury[1] |

[1] Betty M. Stansbury is petitioners' daughter.

On December 3 and 4, 1986, the IRS filed separate Notices of Federal Tax Lien with the State of Colorado and the clerk and recorder of Larimer County, Colorado, against all of ABC's property for the tax liability, penalties, and interest due for the years 1980 through 1984. ABC retained no assets from which to satisfy the liens subsequent to the transfers of the six Pleasant Acres lots to petitioners and their daughter.

The IRS's collection efforts were further stymied on March 3 and April 13, 1987, when petitioners and ABC, respectively, filed for protection under chapters 11 and 7, respectively, of the Bankruptcy Code. Petitioners' bankruptcy case was dismissed without a discharge having been received on February 15, 1989, and the ABC bankruptcy estate was closed for lack of assets on April 13, 1989. On or about January 1, 1991, ABC's corporate status was dissolved in the State of Colorado.

The IRS determined transferee liability against petitioners and mailed notices of such liability on January 2, 1992, which date was within the applicable period for assessment.

## OPINION

Pursuant to section 6901, respondent may collect from a transferee of assets the unpaid income tax liability of the transferor. *Phillips v. Commissioner,* 283 U.S. 589, 592, 593–594 n.3 (1931) (discussing the Revenue Act of 1926, ch. 27, sec. 280, 44 Stat. 9, 61, which was a predecessor to section 6901); *Gumm v. Commissioner,* 93 T.C. 475, 479 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991). Section 6901 does not, however, create or define the transferee's substantive tax liability but merely provides respondent with

the procedural remedy to collect the transferor's existing liability from the transferee. *Commissioner v. Stern,* 357 U.S. 39, 42–43 (1958) (interpreting then section 311, a predecessor to section 6901).

Respondent has the burden of proving all of the elements necessary to establish petitioners' liability as transferees, but not to show that the transferor was liable for the tax. Sec. 6902(a); Rule 142(d). If respondent meets this burden of proof, the transferee is liable for the transferor's taxes due as of the time of the transfer, as well as any additions to tax, to the extent of the value of the assets transferred. *Estate of Glass v. Commissioner,* 55 T.C. 543, 575 (1970), affd. 453 F.2d 1375 (5th Cir. 1972).

In the present case, petitioners have conceded that they are liable as transferees, that the value of the assets transferred from ABC was $75,000, and that they are liable under section 6601 for interest after January 2, 1992, the date each was sent a notice of transferee liability.[3] The only remaining question is whether petitioners are liable for interest for the period from the date the property was transferred to the date the notices were sent.

Petitioners argue that Federal law applies to the determination of their liability for interest prior to the date of the notices, and that the holding of the Court of Appeals for the Tenth Circuit in *Voss v. Wiseman,* 234 F.2d 237 (10th Cir. 1956) (*Voss*), is directly applicable to this case.[4] The *Voss* case concerned a transferee's liability for interest where the value of the assets received was less than the tax deficiency of the transferor. The court indicated that section 311 (the predecessor of section 6901) provided the "statutory authority for pursuing transferred assets", and stated that

[section 311] does not impose any new obligations on the transferee of the taxpayer's property and may be used only to enforce a liability already existing in law or in equity. * * *

\* \* \* \* \* \* \*

The statute does not require the transferee to respond in interest except that which is due from the transferor. * * *

[*Id.* at 239–240.]

---

[3] Federal law provides for interest subsequent to the issuance of the notice of transferee liability. *Estate of Stein v. Commissioner,* 37 T.C. 945, 959 (1962); *Patterson v. Sims,* 281 F.2d 577, 580 (5th Cir. 1960).

[4] This case is appealable to the Court of Appeals for the Tenth Circuit.

Although interest was denied respondent on the theory of res judicata, the court stated:

the right of the Commissioner to interest must be predicated upon the theory of damages for delay in making payment. * * * If the transferee * * * [after receiving notice] retained possession or refused to pay, the Commissioner was damaged and could recover interest to the same extent as might be awarded by a court of law or equity. [*Id.* at 240; citations omitted.]

Petitioners argue that the court's interpretation of transferee liability under section 311 precludes their liability for interest prior to January 2, 1992, the date they were issued notices of transferee liability. Respondent contends that petitioners' liability for interest is to be determined under State law and that the court's reliance on Federal law is not controlling. We agree with respondent.

While *Voss* recognizes that respondent has authority to collect the transferor's unpaid tax liability from the transferee to the extent of the assets received, the case does not consider the possible relevance of State law in determining the transferee's liability for interest. Respondent argues that the Supreme Court's opinion in *Commissioner v. Stern, supra,* which was issued 2 years after *Voss,* directs us to apply State law to that determination. The Court stated:

Prior to the enactment of * * * section 311, the rights of the Government as creditor, enforceable only by bringing a bill in equity or an action at law, depended upon state statutes or legal theories developed by the courts for the protection of private creditors, as in cases where the debtor had transferred his property to another. * * * since section 311 is purely a procedural statute we must look to other sources for definition of the substantive liability. Since no federal statute defines such liability, we are left with a choice between federal decisional law and state law for its definition.

\* \* \* \* \* \* \*

we think that the creation of a federal decisional law would be inappropriate in these cases. * * * Accordingly, we hold that, until Congress speaks to the contrary, the existence and extent of liability should be determined by state law.

[*Commissioner v. Stern, supra* at 43–45.]

We discussed the application of State law to the determination of a transferee's liability for interest in *Estate of Stein v. Commissioner,* 37 T.C. 945, 961 (1962):

In cases where the transferred assets exceed the total liability of the transferor, the interest being charged is upon the deficiency, and is therefore a right created by the Internal Revenue Code. However, where, as here, the transferred assets are insufficient to pay the transferor's total liability, interest is not assessed against the deficiencies because the transferee's liability for such deficiencies is limited to the amount actually transferred to him. Interest may be charged against the transferee only for the use of the transferred assets, and since this involves the extent of transferee liability, it is determined by State law. *Commissioner v. Stern, supra.*

Since *Voss,* the Court of Appeals for the Tenth Circuit has not addressed the issue present here—transferee liability for interest when the value of the assets received is less than the transferor's tax deficiency. In *United States v. Floersch,* 276 F.2d 714 (10th Cir. 1960), however, the court discussed the effect of *Stern* on transferee liability cases generally:

The federal law does not define the liability of a transferee other than stating that it is the liability at law or in equity. We look to the state law to determine what the liability of a transferee for the debts of the transferor is. This subject was fully explored and discussed by the Supreme Court in the late case of *Commissioner of Internal Revenue v. Stern,* 357 U.S. 39 * * *. The effect of the decision is that if, under state law, the assets of a transferor, who becomes insolvent by virtue of such transfer, can be reached in the hands of his transferee by his creditors, they can be reached by the federal government for the purpose of subjecting them to the tax liability of the transferor. * * * [*Id.* at 717.]

In the wake of the Supreme Court's indication in *Stern* that State law is to be used in determining the "existence and extent" of transferee liability, and considering the Court of Appeals for the Tenth Circuit's parallel comments in this regard in *Floersch,* we conclude that *Voss* does not preclude us from applying State law to the determination of petitioners' liability for interest in the present case. Although "better judicial administration requires us to follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone", *Golsen v. Commissioner,* 54 T.C. 742, 757 (1970) (fn. refs. omitted), affd. 445 F.2d 985 (10th Cir. 1971), we need not do so where "it is not clear that the * * * [Court of Appeals] would disagree with our conclusion" and "Accordingly * * * we are obliged to decide this case as we think right", *Lardas v. Commissioner,* 99 T.C. 490, 498 (1992). We note our comments in *Lowy v. Commissioner,* 35 T.C. 393,

395 (1960), supporting the application of State law to the present case:

> The confusion engendered by petitioner's position grows out of a situation where the amount of the transferred assets is less than the amount of the creditor's claim, and where, in order to make the creditor whole, it may be necessary to find some liability against the transferee *for interest in respect of the transferred assets.* Such interest, by its very nature, can arise only under State law, and must comply in every respect with applicable State law not only as to rate, but also as to the starting point. Thus, if the transferred assets herein had been equal to only $100,000, substantially less than the amount of the basic deficiencies, they would plainly have been insufficient to satisfy the Government's claim. However, in such circumstances, the transferee would have had the use of the transferred assets over a period of time, and it is quite possible that he would be liable, under State law, for interest, not on the Government's claim against the transferor, but on the amount of the transferred assets, measured from a point of time that would not be earlier than the date of the transfer.

Since the value of the assets transferred to petitioners was less than ABC's tax liability, the present case is no different from the situation described in the above excerpt from *Lowy.* As we stated in *Estate of Stein v. Commissioner, supra* at 960, respondent in these cases "is in the position of a creditor of the transferor under State law, and if such creditor cannot collect interest under State law, respondent cannot do so here." Accordingly, in the present case, we must determine whether respondent would be entitled to interest as a creditor under State law.

As the property transfers occurred in Colorado, respondent's remedies would be subject to Colorado law regarding whether petitioners are liable for interest and when any interest would commence. Respondent argues that the transfers of the Pleasant Acres properties to petitioners at a time when ABC's tax liability was due and owing constitutes a "wrongful withholding" within the meaning of Colo. Rev. Stat. sec. 5–12–102(1) (1992).[5] Under that statute, interest

---

[5] Colo. Rev. Stat. sec. 5–12–102 (1992) provides in relevant part:

Statutory interest. (1) * * * when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all mon-

accrues from the date money or property is wrongfully withheld. Thus, if petitioners' receipt of property from ABC constitutes a wrongful withholding, petitioners will be liable for interest from the date of the transfers.

While Colo. Rev. Stat. sec. 5–12–102 does not contain a definition of "wrongful withholding", it is clear that the term is not to be strictly construed. *Isbill Associates v. City and County of Denver,* 666 P.2d 1117, 1121 (Colo. Ct. App. 1983). Tortious conduct is not required to establish a wrongful withholding. *Cooper v. Peoples Bank & Trust Co.,* 725 P.2d 78, 81 (Colo. Ct. App. 1986); *Benham v. Manufacturers & Wholesalers Indem. Exch.,* 685 P.2d 249, 254 (Colo. Ct. App. 1984). Nor is it necessary that a demand for payment be made for a wrongful withholding to occur where such a demand is not an element of the creditor's claim. *Deacon v. American Plant Food Corp.,* 782 P.2d 861, 864 (Colo. Ct. App. 1989), revd. on another issue sub nom. *Stone's Farm Supply, Inc. v. Deacon,* 805 P.2d 1109 (Colo. 1991).[6]

In *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362, 364 (Colo. 1989), the Supreme Court of Colorado upheld a broad interpretation of the State's wrongful withholding statute and stated the following:

The purpose of section 5–12–102 is to discourage a person responsible for payment of a claim to stall and delay payment until judgment or settlement. Section 5–12–102 recognizes the time value of money. It represents a legislative determination that persons suffer a loss when they are deprived of property to which they are legally entitled. [Citations omitted.]

In the present case, petitioners' transferee liability stems from ABC's failure to pay Federal income tax for the years 1980 through 1984. Federal tax liabilities, though unassessed, are obligations deemed due and owing at the close of the taxable year. *Updike v. United States,* 8 F.2d 913 (8th Cir. 1925); *Hagaman v. Commissioner,* 100 T.C. 180, 185

---

eys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

[6] The court's holding in *Deacon v. American Plant Food Corp.,* 782 P.2d, 861, 864 (Colo. Ct. App. 1989), revd. on another issue sub nom. *Stone's Farm Supply, Inc. v. Deacon,* 805 P.2d 1109 (Colo. 1991), contrasts with petitioners' argument that transferee liability does not commence until a notice of such liability has been sent. Petitioners' reliance on *Voss v. Wiseman,* 234 F.2d 237 (10th Cir. 1956), for their claim is misplaced. As previously noted, the determination of the existence and extent of transferee liability depends upon State law. *Commissioner v. Stern,* 357 U.S. 39, 42–43 (1958). The court's decision in *Voss,* which preceded *Stern,* does not address State law, and, thus, does not provide a basis for a determination, under State law, as to when a transferee's liability for interest begins to run.

(1993). We also note that Mr. Stansbury, acting on behalf of ABC, executed Forms 4549 in March 1986 agreeing to the assessment and collection of tax and penalties for the years 1980 through 1984 and that the agreed liabilities were assessed on June 30, 1986. Thus, petitioners were aware that ABC's tax liabilities were due and owing prior to the transfer of the Pleasant Acres properties in October 1986. In summary, petitioners, as 100-percent shareholders, controlled ABC's actions, were aware of ABC's Federal tax liabilities, and, nevertheless, caused the transfer of ABC's remaining assets in contravention of respondent's collection efforts. We hold that petitioners' actions constitute a "wrongful withholding" of property within the broad meaning of Colo. Rev. Stat. sec. 5–12–102. Thus, petitioners are liable as transferees for interest from the date the property transfers occurred.

On brief, petitioners argue that interest is not due from the date of transfer absent a finding that the properties were fraudulently conveyed, which is defined in Colo. Rev. Stat. sec. 38–10–117 (1982) as a transfer "made with the intent to hinder, delay, or defraud creditors". Petitioners argue that ABC's transfer of the Pleasant Acres properties in October 1986 was not fraudulent "owing to consideration the transferor received for the transfer." The record before us, however, contains insufficient evidence of such consideration, including only (1) a notation on petitioners' bankruptcy petition that the Pleasant Acres properties were transferred "In payment of some past loans", and (2) copies of several canceled checks and deposit slips purporting to represent payments from petitioners to ABC. Petitioners introduced no other loan documentation, repayment schedules, or any other evidence of the enforceability of the alleged loans. Additionally, we note that the presence or absence of valuable consideration is not determinative of fraud under Colo. Rev. Stat. sec. 38–10–117 (1982); rather, the relevant inquiry is whether the debtor intended to hinder or delay a creditor's recovery. See *Fish v. East,* 114 F.2d 177, 183 (10th Cir. 1940); cf. Colo. Rev. Stat. sec. 38–10–120 (1982). Consequently, given petitioners' knowledge of ABC's tax liabilities and their control over the company's actions, we find that the

transfers were fraudulent within the meaning of Colo. Rev. Stat. sec. 38–10–117 (1982).[7]

Finally, since petitioners are liable under State law for interest from the date of the transfers, the rate of interest to be applied must also be determined under State law. Under Colo. Rev. Stat. sec. 5–12–102(1) (1992), the rate of interest on a wrongful withholding is either "an amount which fully recognizes the gain or benefit realized by the person withholding * * * [the] money or property", or, at the election of the claimant, 8 percent compounded annually. Respondent argues that ABC's transfer of its remaining assets to petitioners delayed the payment of taxes due and owing, and that ABC thereby "benefited" by avoiding the payment of interest at the Federal underpayment rates established under section 6601 and section 6621. Respondent concludes that petitioners are therefore liable under Colo. Rev. Stat. sec. 5–12–102(1)(a) (1992) for interest at the Federal underpayment rates avoided by ABC. We disagree.

The statutory provision for interest on a wrongful withholding under Colo. Rev. Stat. sec. 5–12–102(1)(a) (1992) stems from the common law doctrine of moratory interest— that is, interest by way of damages. *Great Western Sugar Co. v. KN Energy, Inc.*, 778 P.2d 272, 276 (Colo. Ct. App. 1989). Noting that "Moratory interest has been allowed in Colorado for more than 100 years", *Davis Cattle Co. v. Great Western Sugar Co.*, 393 F. Supp. 1165, 1188 (D. Colo. 1975), affd. 544 F.2d 436 (10th Cir. 1976), the District Court in *Davis Cattle Co.* summarized the principles of Colorado law supporting the moratory interest doctrine as follows:

1. Even where statutory interest may not be allowed, interest by way of damages can be awarded.

2. The measure of damages is the guilty party's gain rather than the victim's loss.

---

[7] As noted earlier, petitioners have conceded that they are liable as transferees and that they are subject to the procedural collection provisions of sec. 6901. We have also noted above that the existence and extent of transferee liability is determined by State law. *Commissioner v. Stern, supra* at 42–43. Petitioners argue on brief, however, that their receipt of all of ABC's remaining assets was neither a wrongful withholding under Colo. Rev. Stat. sec. 5–12–102 nor a fraudulent conveyance under Colo. Rev. Stat. sec. 38–10–120 (1982), yet they have failed to offer an alternative Colorado statute upon which their liability is based. We cannot agree with petitioners' attempt to avoid the consequences of their conceded liability as transferees which, pursuant to our review of the facts of this case and the relevant Colorado statutes cited by the parties, includes liability for interest from the date of the transfers.

3. In the absence of proof as to the amount of the guilty party's gain, the statutory rate should be awarded, but if there is proof of the amount of benefit to the guilty party, that amount should be awarded as damages. [*Id.* at 1191.]

Under Colo. Rev. Stat. sec. 5–12–102(1)(a) (1992), as under the State's moratory interest doctrine outlined in *Davis Cattle Co.,* respondent must show the amount actually gained by petitioners from their receipt and wrongful withholding of ABC's assets. See *Great Western Sugar Co. v. KN Energy, Inc., supra* at 274; *Alfred Brown Co. v. Johnson-Gibbons & Reed,* 695 P.2d 746, 749 (Colo. Ct. App. 1984). In the present case, petitioners' transferee liability commenced under State law on the date of the transfers. It is from this date that petitioners', ·rather than ABC's, "gain or benefit realized" must be determined. Respondent has offered no evidence of actual gain or benefit realized by petitioners from their receipt and use of the Pleasant Acres properties, nor can it be said that petitioners benefited by avoiding interest at the Federal underpayment rates, since their liability is established under State, rather than Federal, law and the Colorado statutes nowhere apply Federal interest rates to liabilities determined under State law.[8] Accordingly, since we find no proof of benefit to petitioners, interest shall be applied pursuant to the statutory rate provided in Colo. Rev. Stat. sec. 5–12–102(1)(b) (1992)—8 percent per annum from the date of the transfers. See *Alfred Brown Co. v. Johnson-Gibbons & Reed, supra* at 749.

We have considered all other arguments made by petitioners and find them to be without merit.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*

[8] We recognize that petitioners, as 100-percent owners of ABC, may benefit indirectly from any taxes or interest avoided by ABC; however, we must view petitioners and ABC as separate entities for purposes of determining petitioners' independent liability for interest as transferees under Colorado law.