**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 12/23/96**

**TENTH CIRCUIT**

LELAND STANSBURY, DORIS E.
STANSBURY,

      Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent.

Nos. 95-9020, 95-9021

**APPEAL FROM THE UNITED STATES TAX COURT**

**(T.C. Nos. 7026-92, 7025-92)**

Randall M. Willard, Willard & Pharris, P.C., Fort Collins, Colorado, for petitioners.

Annette M. Wietecha (Bruce R. Ellison, Marion E.M. Erickson on the briefs), Tax
Division, Department of Justice, Washington, D.C., for respondent.

Before **EBEL, Circuit Judge, KELLY, Circuit Judge,** and **MCWILLIAMS,
Senior Circuit Judge**.

**MCWILLIAMS, Senior Circuit Judge.**

      This is a tax case where the only issue is whether the United States Tax Court (Tax

Court) erred in adding certain interest to the transferees' admitted tax liability. We conclude that the Tax Court did not err, and, therefore, affirm. Some background facts are necessary.

Leland D. Stansbury and Doris E. Stansbury, husband and wife, were at all relevant times residents of Fort Collins, Colorado. On October 10, 1973, they incorporated ABC Realty, Inc. (ABC), for the purpose of buying and selling real estate. Mr. Stansbury was president of ABC and Mrs. Stansbury was secretary and treasurer. The Stansburys owned all of ABC's stock and, along with one Victoria Hays, were the company's directors.

In November 1981, the Internal Revenue Service (IRS) commenced an examination of ABC for the years 1979, 1980 and 1981, for which years ABC failed to file federal corporate income tax returns. At the same time, the IRS began an examination of the Stansburys' individual income tax liabilities for 1974 through 1980, for which years the Stansburys also had failed to file returns. Later, the examination of ABC was expanded to include the years 1982, 1983 and 1984. On June 18, 1984, ABC filed its tax return for 1979.

On March 8, 1986, ABC, through its president, Mr. Stansbury, agreed to an assessment and collection of taxes and penalties determined by the IRS for 1980, 1981 and 1982 by executing Form 4549. On March 19, 1986, ABC, through Mr. Stansbury, agreed to the assessment and collection of taxes and penalties for 1983 and 1984 by

executing a second Form 4549.

On or about October 20, 1986, ABC, without having paid any of the taxes or penalties it had agreed to pay, transferred to Mr. Stansbury certain real property owned by ABC located in Fort Collins, and transferred other real property in that area to Mrs. Stansbury. On that same date, ABC also transferred other real property to the Stansburys' daughter, Betty M. Stansbury. Following these transfers, ABC had no remaining assets.

On December 3, 1986, the IRS filed a notice of lien with the Colorado Secretary of State against all property of ABC for its outstanding tax liability for the years 1980 through 1984. On December 4, 1986, the IRS filed a notice of lien with the Clerk and Recorder of Larimer County, Colorado, against all property of ABC for its outstanding tax liability for the years 1980 through 1984.

On March 3, 1987, the Stansburys filed for protection under Chapter 11 of the Bankruptcy Code. On February 15, 1989, the bankruptcy proceeding was concluded by a dismissal without receiving a discharge. On April 13, 1987, ABC filed for protection under Chapter 7 of the Bankruptcy Code. On September 30, 1987, ABC was suspended as an active Colorado corporation. On April 13, 1989, ABC's bankruptcy proceeding was closed as a no-asset case. On January 1, 1991, ABC was dissolved as a Colorado corporation.

On January 2, 1992, the Commissioner of Internal Revenue (Commissioner) issued a notice of transferee liability to Leland Stansbury, as a transferee of ABC, for unpaid

- 3 -

taxes of ABC for the years 1980 and 1981.  See 26 U.S.C. §§ 6212(a)[1] and 6901(a).[2]  On

that same date, the Commissioner also issued a notice of transferee liability to Doris

Stansbury, as a transferee of ABC, for ABC's unpaid taxes for the years 1980, 1981,

1982, 1983 and 1984.  On April 3, 1992, the Stansburys filed timely petitions in the Tax

Court.

On September 27, 1993, the parties settled the big part of the case by agreeing to

the following: (1) that Mr. Stansbury was liable to the IRS as a transferee of real property

from ABC in the amount of $25,000.00; (2) that Mrs. Stansbury was liable to the IRS as a

_____

[1]§ 6212.  Notice of deficiency
        (a) In general.--If the Secretary determines that there is a deficiency in
respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44, he is
authorized to send notice of such deficiency to the taxpayer by certified mail or registered
mail.

[2]§ 6901.  Transferred assets
    (a) Method of collection.--The amounts of the following liabilities shall, except as
hereinafter in this section provided, be assessed, paid, and collected in the same manner
and subject to the same provisions and limitations as in the case of the taxes with respect
to which the liabilities were incurred:
        (1) Income, estate and gift taxes.--
            (A) Transferees.--The liability, at law or in equity, of a transferee of
          of property--
                (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to
              income taxes),
                (ii) of a decedent in the case of a tax imposed by chapter 11 (relating to
              estate taxes), or
                (iii) of a donor in the case of a tax imposed by chapter 12 (relating to
              gift taxes),
            in respect of the tax imposed by subtitle A or B.

transferee of real property from ABC in the amount of $50,000.00; and (3) that the $75,000.00 figure, ($25,000.00 plus $50,000.00), was less than the total amount owed to the IRS by ABC. The parties also agreed that the Stansburys were personally liable for interest on the transferred assets accruing after they received the notices of transferee liability, and before payment thereof. The parties then stipulated that the only remaining issue before the Tax Court was whether the Stansburys were liable for interest on the transferred assets from the date of the transfer to the date when notices of transferee liability were issued, i.e., from October 20, 1986 to January 2, 1992.

After receiving briefs from the parties, the Tax Court filed its opinion on April 18, 1995. *Stansbury v. Commissioner of Internal Revenue,* 104 T.C. 486 (1995). The Tax Court, *inter alia,* rejected the Stansburys' contention that the question of whether they were liable for interest on the transferred assets from the date of transfer to the date they were issued notices of transferee liability was to be determined under federal law, and that under *Voss v. Wiseman,* 234 F.2d 237 (10th Cir. 1956), they were not liable for interest for that period of time. The Tax Court agreed with the Commissioner's position that under federal law the Stansburys' liability for interest for the period of time here in question was to be determined by state law. The Tax Court then went on to hold that, under Colorado law, the transfer of real estate from ABC to the Stansburys constituted a "wrongful withholding" and was, therefore, subject to interest from the date of the transfer. A decision was formally entered in the two cases on June 28, 1995. The

Stansburys each filed timely petitions for review by this court on September 25, 1995. 26 U.S.C. § 7482; Fed. R. App. P. 13. On December 15, 1995, the petitions were consolidated in this court.

The heart of the Stansburys' argument in this court is that *Voss v. Wiseman, supra,* is dispositive of the controversy and compels a holding that they are not liable for interest on the transferred assets of ABC from the date of transfer. In other words, the Stansburys' contend that, under *Voss,* they are only liable for interest on the transferred assets from and after the date they were issued notices of transferee liability until the date of payment. In our view, *Voss* is different from the present case in several important particulars.

In *Voss,* a corporation distributed all of its assets to its stockholders on June 20, 1945. At the time of the distribution, the corporation had filed income tax returns for all of the years in question and had paid the full amount of taxes shown to be due. Sometime after the distribution, an investigation was made by the Commissioner in which it was determined that the corporation owed $51,711.93 in federal taxes, plus interest, for the taxable years 1941, 1942, 1943, 1944 and 1945.

On April 6, 1948, nearly three years after the distribution of the corporation's assets, the Commissioner notified the stockholders of the corporation's assets of the deficiencies in the corporation's tax returns and of his determination that each of them was liable, as transferees, to the extent of the value of the assets distributed to them.

Upon redetermination, the Tax Court found that the liability of each of the transferees was $12,927.99. This finding, incidentally, was based upon a stipulation of the parties.

The ruling of the Tax Court was not appealed and became final. The Collector of Internal Revenue thereafter made demand upon the transferees for the corporation's tax liability of $12,927.99, and an additional sum of $5,308.98 as interest. Each transferee paid the $12,927.99, but refused to pay the additional sum of $5,308.98, as interest thereon. The Collector advised the transferees that a warrant for distraint had been issued to aid in the collection of that amount. Interest was paid and the transferees then brought an action for refund, after their claims had been administratively denied. The district court held that the transferees were liable for interest on the value of the assets received from the corporation from the date the corporation's assets were received by the transferees, i.e., June 20, 1945. *Voss v. Wiseman,* 1955 WL 9220 (D. Okla. July 20, 1955). The transferees appealed.

On appeal, we reversed the district court. *Voss v. Wiseman,* 234 F.2d 237 (10th Cir. 1956). As we read *Voss,* our holding was that the transferees sought, as they had a right to do, a redetermination of their tax liability in the Tax Court, which then fixed their liability at $12,927.99 per transferee. In so doing, we stated that "[n]o claim was made for interest and none was allowed" and that since "[n]o appeal was taken from that decision, it became final, and the Commissioner may not thereafter make an assessment for interest under that decision." *Voss,* 234 F.2d at 240.

It is quite true that in *Voss* we did state, probably by way of dicta, that "[a]ssuming that the Tax Court had jurisdiction to determine the amount of interest due, we hold that ordinarily, if claim had been made, the plaintiffs would be responsible for interest on the value of the assets received from April 6, 1948, the date of the deficiency assessment and notice thereof, to the date of payment." *Id.* From the foregoing, one could possibly infer that a transferee was not liable for interest on the assets transferred from the date of the transfer to the date of the deficiency asset and notice thereof, though we did not specifically say so.

To us, there are obvious and significant differences between *Voss* and the present case. The Commissioner in this case <u>did</u> make a claim for interest from the date of transfer on the value of the assets received by the Stansburys from ABC and the Tax Court allowed interest. So, the matter of interest in the instant case was before the Tax Court, whereas in *Voss* we found it was not. Further, in *Voss,* the transferees of the corporation's assets had no notice of any sort that the transferor corporation had unpaid taxes. In fact, they did not know of such until some three years later when they received a notice of deficiency for the transferor corporation's unpaid taxes. In the present case, the Stansburys knew of ABC's tax liability before the transfer. Indeed, the settlement with the Commissioner was negotiated by Mr. Stansbury himself. Then, after negotiating the settlement, ABC transferred all of its assets to the Stansburys without paying the admitted

liability to the IRS. *Voss* simply does not resolve the present case.[3]

As a starting point in our discussion, the Stansburys agree that the Commissioner may collect from them, as the transferees of ABC's assets, the unpaid income tax liability of ABC to the extent of the assets received. 26 U.S.C. § 6901(a); *see Phillips v. Commissioner*, 283 U.S. 589, 592-94 (1931).[4] Further, as we understand it, the Stansburys also agree that they are personally liable for interest on the assets received by them from ABC from the date of the notices of transferee liability until the date of payment. Thus, as previously stated, the only matter at issue here is whether the Stansburys are also personally liable for interest from the date they received ABC's assets until the date they were issued notices of transferee liability. As indicated, the Stansburys' position is that any such liability should be determined under "federal law" and that under *Voss, supra*, they are not liable for such interest. The Commissioner's position, which was adopted by the Tax Court, is that any such liability on the part of the

---

[3]Apparently, in the Tax Court, the Stansburys suggested that ABC's assets were conveyed to them as consideration for prior loans made to ABC by the Stansburys. In this regard, the Tax Court brushed aside that suggestion by stating that "[t]he record before us, however, contains insufficient evidence of such consideration . . . ." *Stansbury*, 104 T.C. at 495. The Stansburys, in this court, although making a brief reference thereto in their reply brief, do not pursue this particular matter.

[4]The necessary elements for making out a case of transferee liability in equity are as follows: (1) the taxpayer transferred assets to the transferee; (2) the transfer was made without consideration or for less than adequate consideration; (3) the transfer was made after the tax liability of the transferor accrued; (4) the transferor was insolvent at the time of the transfer or was rendered insolvent by the transfer; (5) proof of the value of the assets transferred; and (6) all available remedies to collect from the transferor were exhausted. 14 **Mertens Law of Fed. Income Tax** § 53.01, at 2 (1993).

Stansburys should be determined under state law, relying on *Commissioner of Internal Revenue v. Stern,* 357 U.S. 39 (1958), and that under Colorado law the Stansburys are liable for interest on the assets they received from ABC from the date of the transfer. *Stern* merits discussion.

In *Stern*, Dr. Stern, a resident of Lexington, Kentucky, died in 1949. Some six years later, the Tax Court held that Dr. Stern had been deficient in his income taxes for the years 1944 through 1947, and that his estate was liable for a total amount of $32,777.51, including penalties and interest. Because the assets of his estate were insufficient to meet this tax liability, the Commissioner proceeded under the then applicable federal statute against Dr. Stern's widow, who was a beneficiary of certain life insurance policies held by Dr. Stern at the date of his death. Specifically, the proceeds of such policies totaled $47,282.02 and the cash surrender value of such at the time of Dr. Stern's death was $27,259.68.

The Tax Court in *Stern* held that Mrs. Stern, as the beneficiary of her husband's life insurance proceeds, which exceeded her husband's tax deficiencies, was liable for the full amount of the deficiency. *Stern v. Commissioner of Internal Revenue,* 1956 WL 298 (Tax Ct., Jan. 26, 1956). On appeal, the Sixth Circuit Court of Appeals reversed the Tax Court and held that the widow was not liable even to the extent of the cash surrender value of the policies, which was less than the amount of the deficiencies. *Stern v. Commissioner of Internal Revenue*, 242 F.2d 322 (6th Cir. 1957). In so doing, the Sixth

Circuit held: (1) that the widow was not a "transferee" under the then applicable federal statute, and (2) that in any event, under applicable Kentucky statutes, a beneficiary's liability to creditors of the deceased insured was limited to the amount of premiums paid by the insured in fraud of his creditors. The Sixth Circuit then went on to hold that there was no liability on the part of the widow since there was no evidence that Dr. Stern paid any premium in fraud of his creditors.

The Supreme Court in *Stern* affirmed the Sixth Circuit on the ground that under applicable Kentucky statutes there was no liability on the part of the widow for any portion of her deceased husband's tax liability. The Court specifically declined to address the additional ground relied on by the Sixth Circuit, i.e., that the widow was not a "transferee" within the meaning of the applicable federal statute. In deciding whether the widow had any substantive tax liability, the Supreme Court stated that "we are left with a choice between federal decisional law and state law . . . ." *Stern*, 357 U.S. at 44. In *Stern*, the government was arguing that "federal decisional law" applied, whereas the widow was arguing that "state law" controlled.

In *Stern*, the Supreme Court held that "until Congress speaks to the contrary, the existence and extent of [the widow's] liability should be determined by state law." *Id*. at 45. The Supreme Court recognized that in holding that a tax liability issue of this sort should be determined under state law, there could be "varying definitions of [federal] tax liability . . . ," depending on the laws of a particular state and resulting in "an absence of

uniformity of liability." *Id.* In that connection, the Supreme Court stated that "[u]niformity is not always the federal policy" and recognized that "[w]hat is a good transfer in one jurisdiction might not be so in another." *Id.*

Three Justices dissented in *Stern*. They stated that "liability for federal taxes should be determined by uniform principals of federal law, in the absence of the plainest congressional mandate to the contrary." *Id.* at 48. The dissenters then went on to state that they "would hold, as a matter of federal law, that where a transferee receives property from a taxpayer who is left with insufficient assets to pay his federal taxes the transferee is liable for those taxes to the extent he has not given fair consideration for the property received."[5] *Id.* at 50.

Thus, under *Stern* and its progeny, the Stansburys' liability for interest on the assets received by them from ABC on October 20, 1986, should be determined under Colorado law. As indicated, the Tax Court held that, under Colorado law, the Stansburys were liable for interest on the assets they received from ABC from the date of transfer (October 20, 1986), to the date the notices of transferees liability were issued (January 2, 1992), at the statutory rate of 8% per annum, compounded annually. We are in general accord with the Tax Court's understanding of Colorado law on this particular matter.

---

[5]In *United States v. Floersch,* 276 F.2d 714 (10th Cir. 1960), decided two years after *Stern* and four years after *Voss*, we held that since federal law did not define the liability of a transferee, other than stating that it is the liability at law or in equity, "[w]e look to the state law to determine what the liability of the transferee for the debts of the transferor is." *Floersch*, 276 F.2d at 717. *Floersch* made no mention of *Voss*.

Colo. Rev. Stat. § 5-12-102 reads as follows:

> Statutory interest. (1) . . . when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
>
> > (a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,
> >
> > (b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

The key words in the aforesaid statute are "wrongfully withheld," which words, however, are not defined by statute. In this connection, in *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.,* 878 F.2d 1259, 1269-70 (10th Cir. 1989), we noted that Colorado courts have consistently held that Colo. Rev. Stat. § 5-12-102 is to be liberally construed and looked to the legislative history of that statute.[6] In this latter regard, the Colorado Court of Appeals in *Isbill Assocs., Inc., v. City & County of Denver,* 666 P.2d 1117, 1121 (Colo. App. 1983), spoke as follows:

---

[6]Further, "[t]he term 'creditors' used in the statute [Colo. Rev. Stat. § 5-12-102] has been construed broadly to include all claimants who have been damaged by the actions of another." 9 Stephen W. Seifert, **Colorado Practice, Creditors' Remedies--Debtors' Relief**, 411 (1990).

> All plaintiffs, or defendants who counterclaim, for that matter, are entitled to interest from the time the action accrued, not from the time the suit was filed, not from the time judgment was entered, but from the time they were wronged . . . . The present state of the law encourages the wrongdoer to stall because in some cases they have the money until judgment or settlement.

It would appear that the purpose of Colo. Rev. Stat. § 5-12-102 is to discourage a person responsible for payment of a claim from delaying payment. In *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362, 364 (Colo. 1989) (en banc), the Supreme Court of Colorado upheld a broad interpretation of the State's "wrongful withholding" statute and observed as follows:

> The purpose of section 5-12-102 is to discourage a person responsible for payment of a claim to stall and delay payment until judgment or settlement. Section 5-12-102 recognizes the time value of money. It represents a legislative determination that persons suffer a loss when they are deprived of property to which they are legally entitled. (citations omitted).

As the Tax Court noted, the Stansburys had the use of the assets which they wrongfully received from ABC from October 20, 1986, until January 2, 1992, and it would seem fair that they pay statutory interest thereon. It should again be emphasized that Mr. Stansbury, as president of ABC, himself negotiated in March, 1986, an agreement with the Commissioner regarding taxes owed by ABC for the years 1980 through 1984. And then, on October 20, 1986, without paying the agreed upon taxes, Mr. Stansbury caused ABC to transfer all of its assets to himself, his wife and his daughter. We agree with the Tax Court that, all things considered, there was a "wrongful

- 14 -

withholding" within the meaning of Colo. Rev. Stat. § 5-12-102.

As the Tax Court noted, under Colorado law it would appear that a "wrongful withholding" need not involve actual fraud, or indeed be tortious in nature. *Stansbury*, 104 T.C. at 494; *see also Mesa*, 776 P.2d at 364. Colo. Rev. Stat. § 38-10-117 provides that any conveyance "made with the intent to hinder, delay or defraud creditors" is fraudulent. In this regard, the Tax Court stated that "given petitioners' [the Stansburys] knowledge of ABC's tax liabilities and their control over the company's actions, we find that the transfers were fraudulent within the meaning of Colo. Rev. Stat. § 38-10-117 (1982)." *Stansbury*, 104 T.C. at 495. We agree.

Judgment affirmed.