T.C. Memo. 1999-292


UNITED STATES TAX COURT


MARK J. HANNA, P.C., TRANSFEREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10705-97.                     Filed September 1, 1999.


<u>Charles F. Daily, Jr.</u>, for petitioner.

<u>Bruce M. Wilpon</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  Respondent determined that petitioner, as
transferee of assets, is liable for $25,297 plus interest for the
transferor's Federal income tax deficiency for the year 1993.

Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether petitioner is liable as a transferee under the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. secs. 24.001 to 24.012 (West 1987 & Supp. 1999), for $25,297 relating to the transferor's Federal income tax deficiency.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

In 1990, Mark J. Hanna (Hanna) organized Hanna & Associates, P.C. (Associates PC), through which to conduct a law practice in the State of Texas.  Also in 1990, Hanna filed for personal bankruptcy.

During 1991, 1992, and 1993, due to Hanna's poor credit rating, Associates PC experienced financial difficulties. Associates PC could not obtain loans to lease additional office space, acquire office equipment, or expand the law practice.

In January of 1994, in an effort to improve his law practice, Hanna entered into discussions with Charles F. Daily, Jr. (Daily), another Texas lawyer, to combine their respective law practices.[1]

---

[1]    Daily is petitioner's lawyer herein.

In February of 1994, the discussions between Hanna and Daily led to the formation of Mark J. Hanna, P.C. (Hanna PC), as a Texas professional law corporation.  Daily became sole shareholder of Hanna PC, and Hanna became president of Hanna PC.

At the time Hanna PC filed its petition with this Court, Hanna PC's mailing address was in Austin, Texas.

On February 2, 1994 (the transfer date), the assets of Associates PC were transferred to Hanna PC, and Hanna PC assumed responsibility for the outstanding liabilities of Associates PC as of the transfer date.

To effect the transfer of assets and the assumption of liabilities between Associates PC and Hanna PC, Hanna (as president of Associates PC and of Hanna PC) executed a document dated February 2, 1994, entitled "Assignment and Assumption of Liabilities" (Transfer Document).  The Transfer Document was poorly drafted.  It described the assets transferred to and liabilities assumed by Hanna PC only in the most general terms, and it did not identify the specific dollar amounts or values represented by the assets transferred and liabilities assumed.[2]  Also, the Transfer Document did not indicate the total cumulative amount of the assets transferred to or the liabilities assumed by Hanna PC.

---

[2]    Herein, the words "amount(s)" and "value(s)" generally are used interchangeably.

The evidence indicates and we find that on February 2, 1994, pursuant to the above transfer, the following types of assets of Associates PC were actually transferred to Hanna PC:  Cash, accounts receivable, office equipment, an option to purchase a 12-year-old quarter horse (horse option), and an interest in a contingent fee lawsuit (interest in a lawsuit).

We also find that Hanna PC assumed the following types of liabilities of Associates PC:  Notes payable, payroll taxes due, salaries payable, and accounts payable.

In connection with the transfer of assets and assumption of liabilities between Associates PC and Hanna PC, Hanna prepared what is referred to as an Internal Document listing certain of Associates PC's assets and liabilities to be transferred and assumed, setting forth amounts with respect thereto as of January 31, 1994, as follows:

Associates PC's Assets and Liabilities as of
Jan. 31, 1994, per Internal Document

Assets

| | |
|---|---|
| Cash | $15,626 |
| Accounts Receivable | 40,660 |
| Office Equipment | 15,000 |
| Total Assets | $71,286 |

Liabilities

| | |
|---|---|
| Notes Payable | $41,211 |
| Payroll Taxes Due | 6,420 |
| Salaries Payable | 20,367 |
| Accounts Payable | 17,382 |
| Total Liabilities | $85,380 |

We note the discrepancies between the types of assets that actually were transferred from Associates PC to Hanna PC and the list in the Internal Document of the types of assets to be transferred (namely, the horse option and the interest in a lawsuit are not specifically listed in the Internal Document).

Further, we note that the $40,660 amount listed for accounts receivable in the Internal Document does not reflect $42,675 in accounts receivable for legal services rendered by Associates PC prior to, but not billed by Associates PC before, the February 2, 1994, transfer date and only billed by Hanna PC after the transfer date. Also, when Hanna listed the $40,660 amount for accounts receivable in the Internal Document, he did not make an adjustment for uncollectible accounts receivable in the amount of $19,605.

With regard to the liabilities listed in the Internal Document, we note that the parties agree that the correct total amount for notes payable assumed by Hanna PC is $39,821. The $17,382 amount listed for accounts payable in the Internal Document includes $4,282 of liabilities that were attributable not to expenses of Associates PC but to expenses of Hanna individually.

On February 24, 1994, Associates PC dissolved as a professional law corporation.

On March 15, 1994, Associates PC filed its Federal income tax return for 1993.

In 1996, Hanna filed a bankruptcy petition on behalf of Associates PC and a second personal bankruptcy petition on his own behalf.

On February 26, 1997, after an audit, respondent mailed Associates PC a notice of deficiency determining, among other things, an income tax deficiency of $31,450 in Associates PC's 1993 Federal income tax liability.

Also on February 26, 1997, respondent mailed to Hanna PC a notice of transferee liability in the amount of $25,297 relating to the $31,450 income tax deficiency for 1993 that respondent had determined against Associates PC.[3]

OPINION

Under section 6901(a), a procedure is provided to collect from a transferee of assets a transferor's tax liability if the transferee is liable at law or in equity for the transferor's tax liability. See Commissioner v. Stern, 357 U.S. 39, 42 (1958) (interpreting then sec. 311, a predecessor to sec. 6901); Stansbury v. Commissioner, 104 T.C. 486, 489-490 (1995), affd.

_____

[3] At trial, respondent's agent testified that Hanna PC's transferee liability under sec. 6901 should be increased to $28,648. Respondent, however, has not moved to amend his pleading or asked the Court to increase the deficiency to conform to the evidence. We decline to consider an increase in Hanna PC's alleged transferee liability.

102 F.3d 1088 (10th Cir. 1996). In this case, Texas law controls whether Hanna PC is to be liable for the transferor's tax liability (namely, whether the transfer from Associates PC to Hanna PC is to be regarded as a fraudulent transfer under the Texas Uniform Fraudulent Transfer Act (UFTA)). UFTA Tex. Bus. & Com. Code Ann. secs. 24.001 to 24.012 (West 1987 & Supp. 1999); see Commissioner v. Stern, supra at 45; Hagaman v. Commissioner, 100 T.C. 180, 183 (1993). Respondent bears the burden of proof to show that Hanna PC is liable as a transferee, but not to show that Associates PC was liable for the tax. See sec. 6902(a); Rule 142(d).

Under UFTA section 24.006(a), it is provided that a transferor engages in a transfer that is fraudulent as to a creditor if: (1) The transferor makes a transfer to a transferee, (2) the creditor has a claim against the transferor before the transfer is made, (3) the transferor makes the transfer without receiving reasonably equivalent value, and (4) the transferor is insolvent at the time of the transfer or is rendered insolvent as a result of the transfer.[4]

---

[4] The language of sec. 24.006(a) of the Texas Uniform Fraudulent Transfer Act (UFTA), Tex. Bus. & Com. Code Ann. (West 1987), is provided below:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation
> (continued...)

If all four elements of UFTA section 24.006(a) are present, a creditor of the transferor, such as respondent herein, may recover from the transferee an amount equivalent to the lesser of the amount of the assets transferred to the transferee (reduced by the amount of assets or rights received by the transferor on the transfer, if any) or the amount of the creditor's claim. See UFTA sec. 24.009(b), (d).

Hanna PC argues that it was only acting as agent of Associates PC for the purpose of winding up the affairs of Associates PC, that the Transfer Document was not a binding agreement, and that any transfer of assets to Hanna PC did not constitute a fraudulent transfer under UFTA section 24.006(a).

UFTA section 24.002(12) contains a broad definition of a transfer.[5] Hanna PC and respondent stipulate that on February 2, 1994, Associates PC transferred all of its assets to Hanna PC, and the record supports that stipulation. Hanna PC's argument that no transfer occurred is meritless.

---

[4](...continued)
> without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

[5]    Under UFTA sec. 24.002(12), a transfer is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset".

With regard to whether a creditor (namely, respondent herein) had a claim against Associates PC before the transfer date, Hanna PC argues that respondent's notice of deficiency to Associates PC was untimely and therefore that respondent did not have a valid timely claim for a $31,450 Federal income tax deficiency against Associates PC.

The record indicates that Associates PC filed its Federal income tax return for 1993 on March 15, 1994, and that respondent mailed the notice of deficiency to Associates PC on February 26, 1997. Under section 6501(a), respondent's notice of deficiency is timely. We conclude that respondent had a timely claim of $31,450 against Associates PC before the transfer date.[6]

In order to analyze the third element of UFTA section 24.006(a) (namely, whether Associates PC did not receive reasonably equivalent value for the transfer of assets to Hanna PC), we compare the amount of the assets Associates PC transferred to Hanna PC with the amount of the assets or rights, if any, that Associates PC received from Hanna PC. See UFTA sec. 24.004; In re Sullivan, 161 Bankr. 776, 781 (Bankr. N.D. Tex. 1993). In determining the amount of the assets or rights received by Associates PC, we treat (as do the parties herein)

---

[6] Under UFTA sec. 24.002(3), a claim is "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

Hanna PC's assumption of Associates PC's liabilities as a right received by Associates PC on the transfer.

Respondent calculates that the amount of the assets transferred to Hanna PC exceeded the amount of the liabilities assumed by Hanna PC by $28,648.

Hanna PC calculates that the amount of the liabilities assumed by Hanna PC exceeded the amount of the assets transferred to Hanna PC by $82,231.

For comparison purposes, we set forth in schedule format below, respondent's and Hanna PC's respective positions as to the amounts for the assets of Associates PC transferred to Hanna PC, for the liabilities of Associates PC assumed by Hanna PC, and for the total net assets and liabilities transferred and assumed, and we set forth the differences between the parties' calculations:

Assets Transferred to and Liabilities Assumed by Hanna PC

|  | Amounts For | | |
| Assets Transferred | Respondent | Hanna PC | Differences |
| --- | --- | --- | --- |
| Cash | $ 15,626 | $ 15,626 | $       0 |
| Accounts Receivable | 63,730 | 0* | 63,730 |
| Office Equipment | 15,000 | 4,295 | 10,705 |
| Horse Option | 4,000 | 4,000 | 0 |
| Interest in a Lawsuit | 10,000 | 0 | 10,000 |
|     Totals | $108,356 | $ 23,921 | $ 84,435 |
|  |  |  |  |
| Liabilities Assumed |  |  |  |
| Notes Payable | $ 39,821 | $ 39,821 | $       0 |
| Payroll Taxes Due | 6,420 | 6,420 | 0 |
| Salaries Payable | 20,367 | 20,367 | 0 |
| Accounts Payable | 13,100 | 39,544 | 26,444 |
|     Totals | $ 79,708 | $106,152 | $ 26,444 |
|  |  |  |  |
| Total Net Amount of Assets and Liabilities Transferred and Assumed | $ 28,648 | ($ 82,231) | $110,879 |

*At trial and on brief, Hanna PC argued several alternative amounts for accounts receivable. In this schedule, we list the lowest amount for accounts receivable argued by Hanna PC.

We note that the parties analyze each type of asset and liability separately. Also, respondent makes no assertion as to the amount of any possible goodwill or related intangibles. There follow our specific findings with regard to the assets and liabilities the amounts of which are in dispute. We note petitioner's failure, other than through self-serving testimony, to offer on a timely basis any credible evidence as to the value of most of the assets and liabilities involved in this case.

Accounts Receivable

We agree with respondent that the accounts receivable should reflect an amount of $63,730. This amount represents the $40,660 amount for accounts receivable listed in the Internal Document, the $42,675 accounts receivable billed by Hanna PC that relate to legal services performed by Associates PC before the transfer date, and a $19,605 reduction for uncollectible accounts receivable.

Hanna PC argues that because Associates PC was a cash basis taxpayer, none of Associates PC's accounts receivable should be included in the calculation of the amount of the assets transferred. Whether Associates PC was a cash or an accrual basis taxpayer, however, has no bearing on the amount of the assets transferred. See UFTA sec. 24.004(d).

Hanna PC also argues that the accounts receivable billed by Hanna PC represent Hanna's personal property, that therefore the

$40,660 amount listed in the Internal Document for accounts receivable reflects the total amount of Associates PC's accounts receivable, and that no increase should be made for the $42,675 in accounts receivable billed by Hanna PC. No credible evidence supports Hanna PC's argument.

Alternatively, Hanna PC argues that the $63,730 amount for accounts receivable determined by respondent should be further reduced for uncollectible accounts receivable of $18,805 and for accounts receivable of $1,120 relating to services performed by Hanna PC after the transfer. These reductions would result in an amount of $43,805 for accounts receivable. The $18,805 reduction for uncollectible accounts receivable sought by Hanna PC has already been made by respondent when he reduced the amount of the accounts receivable by $19,605 for uncollectible accounts receivable. No further reduction is appropriate. The $1,120 reduction that Hanna PC seeks relating to services performed by Hanna PC is not supported by the evidence.

Based on the evidence, we conclude that Associates PC's accounts receivable should reflect an amount of $63,730 as of the transfer date.

Office Equipment

We disagree with respondent's conclusion that the $15,000 listed in the Internal Document for office equipment represents the amount of the office equipment on the transfer date.

Hanna testified that the $15,000 listed in the Internal Document represents the original cost of the office equipment and that the actual amount of office equipment transferred was only $4,295.

We regard Hanna's testimony as to the amount of the office equipment to be credible. Accordingly, we conclude that the amount of Associates PC's office equipment transferred to Hanna PC was $4,295.

Interest in a Lawsuit

Based on Hanna's own testimony, we conclude that the appropriate amount for the interest in a contingent fee lawsuit on the transfer date was $10,000, as determined by respondent.

Hanna PC claims that because Associates PC was a cash basis taxpayer none of the amount for the interest in a lawsuit should be reflected in calculating the amount of the assets transferred. As stated previously, we reject this argument.

Accounts Payable

We agree with respondent that Associates PC's accounts payable that were assumed by Hanna PC should reflect only

$13,100. This represents amounts owed to Daily for legal services Daily rendered to Associates PC. Although the Internal Document reflects $17,382 for accounts payable, the evidence indicates that $4,282 thereof is attributable to liabilities not of Associates PC and is not related to the transfer of assets from Associates PC to Hanna PC.

Hanna PC argues that the amount of Associates PC's accounts payable is significantly greater than the $13,100 amount determined by respondent and greater than the $17,382 listed in the Internal Document. Hanna PC argues that Associates PC's total accounts payable assumed by Hanna PC were in the amount of $39,544, consisting of $13,100 owed to Daily, $22,854 owed to other professionals for legal expenses, and $3,590 owed to Hanna for automobile related expenses.

With regard to Hanna PC's claim that Associates PC's accounts payable should include $22,854 for legal expenses, Associates PC's 1996 bankruptcy petition and other documents in the record indicate that these legal expenses did not constitute a liability of Associates PC. No credible evidence supports Hanna PC's claim that $3,590 in automobile-related expenses constitutes a liability of Associates PC.

We conclude that the amount of the assets transferred by Associates PC to Hanna PC was $97,651, that Hanna PC assumed Associates PC's liabilities in the amount of $79,708, and that

the total net amount of the assets transferred from Associates PC to Hanna PC, reduced by liabilities assumed by Hanna PC, was $17,943, as set forth below:

Assets Transferred

| | |
|---|---|
| Cash | $15,626 |
| Accounts Receivable | 63,730 |
| Office Equipment | 4,295 |
| Horse Option | 4,000 |
| Interest in a Lawsuit | 10,000 |
| Total Assets | $97,651 |

Liabilities Assumed

| | |
|---|---|
| Notes Payable | $39,821 |
| Payroll Taxes Due | 6,420 |
| Salaries Payable | 20,367 |
| Accounts Payable | 13,100 |
| Total Liabilities | $79,708 |

| | |
|---|---|
| Total Net Amount of Assets and Liabilities Transferred and Assumed | $17,943 |

We also conclude that because Associates PC received only rights worth $79,708 from Hanna PC (namely, Hanna PC's assumption of Associates PC's liabilities in that amount), Associates PC did not receive reasonably equivalent value for the transfer of its assets to Hanna PC.

With regard to whether Associates PC was insolvent on the date of the transfer or was rendered insolvent pursuant to the transfer of its assets to Hanna PC, under UFTA section 24.003(a) a transferor is rendered insolvent if its liabilities are greater than its assets after the transfer. In the instant case, Associates PC had no remaining assets after the transfer, and Associates PC had a $31,450 liability to respondent for Federal

income taxes.  Under UFTA section 24.003(a), Associates PC is to be regarded as insolvent after the transfer date.

Because all four elements of UFTA section 24.006(a) are present, the transfer from Associates PC to Hanna PC is to be treated as a fraudulent transfer, and respondent may recover its $31,450 claim against Associates PC from Hanna PC to the extent of $17,943.  In light of our conclusion as to Hanna PC's liability under UFTA section 24.006(a), we hold that section 6901 provides that the $17,943 amount may be assessed, paid, and collected in the same manner as Associates PC's 1993 Federal income taxes.

Other arguments made by the parties and not addressed herein are without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.