Julius **RUDERMAN**, Plaintiff-Appellant,

v.

**UNITED STATES** of America, Defendant-Appellee.

**Nos. 69, 70, Docket 29717, 29718.**

United States Court of Appeals Second Circuit.

Argued Oct. 26, 1965.

Decided Jan. 18, 1966.

8. See Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030.

Hyman Roffe, New York City (Morris A. Kaplan, New York City, on the brief), for plaintiff-appellant.

Martin T. Goldblum, Department of Justice, Washington, D. C. (Joseph P. Hoey, U. S. Atty. for Eastern District of New York, Brooklyn, N. Y., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson and Meyer Rothwacks, Department of Justice, Washington, D. C. on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and LEVET, District Judge.*

LUMBARD, Chief Judge:

Julius Ruderman brought this refund suit to recover interest charges assessed against him as transferee of the assets of

* Sitting by designation.

D. I. Stone Co., Inc., and paid under protest.[1] The district court denied the claim and we affirm that denial.

All the facts have been stipulated. During the years 1943–1945, Ruderman was the president and 50% stockholder of D. I. Stone Co., Inc., a New York corporation engaged in the manufacture and sale of ladies blouses.[2] Wishing to maintain production despite wartime shortages, Stone purchased some of its material on the black market at prices above the O. P. A. maxima. The illegal purchases were not recorded on Stone's books and, when the finished products were sold, some of the sales were not recorded either. The receipts from these unrecorded sales were retained by Ruderman and allegedly disbursed in amounts approximating the total unrecorded sales receipts. The corporation took no corresponding income tax deduction.

On March 2, 1954, a statutory notice of deficiency (90-day letter) was sent to Stone for taxes plus penalties aggregating $356,035.40, attributable to the unreported sales during the years 1943–1945.[3] On the same day, 90-day letters were sent to Ruderman and his wife for taxes plus penalties for the year 1943

1. 26 U.S.C. § 6901 provides as follows: "Transferred assets

(a) Method of collection.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) Income, estate, and gift taxes.—

(A) Transferees.—The liability, at law or in equity, of a transferee of property—

(i) of a taxpayer in the case of a tax imposed by subtitle A * * * *"

2. The other 50% was owned by one Goodman, whose liabilities were assessed to be exactly the same as those of Ruderman, and who paid, but has chosen not to seek a refund.

3.

| Income Tax | Declared-value Excess Profits Tax | Penalty | Excess Profits Tax | Penalty |
|---|---|---|---|---|
| $1,342.60 | $23,686.31 | $15,622.06 | $201,872.57 | $113,511.86 |

aggregating $18,058.92 [4] and to Ruderman alone for taxes plus penalties aggregating $56,396.28 for the years 1944–1945,[5] attributable to Ruderman's alleged receipt of distributions from Stone, in the nature of dividends, which were not reported as income.[6]

Ruderman and Stone petitioned the Tax Court for a redetermination of the alleged deficiencies.[7] Prior to the taking of testimony, the question of offsets or allowances for cash actually paid to the suppliers was raised by the court. Since the Commissioner had allowed nothing for these payments even though Ruderman had alleged that they approximated the total unrecorded sales income, the court suggested an adjournment to determine whether a compromise and settlement could be effected.

The parties held several conferences concerning the matters then before the Tax Court as well as the question of Ruderman's transferee liability and, on May 27, 1956, the parties entered into stipulations that Stone was liable for taxes plus penalties aggregating $205,943.40 [8] and that Ruderman was personally liable for taxes plus penalties aggregating $30,980.54.[9] These stipulations were filed with the Tax Court on June 1, 1956 and a decision was entered accordingly.

On the same day the parties entered into the above stipulations, Ruderman's counsel attempted to dispose of the alleged transferee liability by submitting a Form 870–AD [10] wherein it was proposed that the entire transferee liability alleged against Ruderman be reduced to $62,072.70.

After the Form 870–AD was executed by the parties, an audit statement was prepared by the I. R. S. and forwarded to Ruderman. On August 3, 1956, Ruderman was notified that there had been assessed against him, as transferee of Stone's assets, taxes and fraud penalties

4.

| Additional Income Tax | Penalty |
| --- | --- |
| $12,039.28 | $6,019.64 |

5.

| Additional Income Tax | Penalty |
| --- | --- |
| $37,597.52 | $18,798.76 |

6. The notice for 1943 was sent to Ruderman and his wife because they filed a joint return in that year while Ruderman filed separate returns in 1944 and 1945.

7. On December 15, 1953, the District Director of Internal Revenue had sent a 30-day letter to Ruderman proposing an assessment of $135,545.63, plus interest as provided by law, constituting his alleged liability as transferee of Stone's assets for taxes plus penalties for the years 1943–1945. No notice of deficiency was ever issued by the Commissioner, hence the transferee liability was not before the Tax Court.

8.

| Income Tax | Declared-value Excess Profits Tax | Penalty | Excess Profits Tax | Penalty |
| --- | --- | --- | --- | --- |
| $2,728.69 | $9,527.24 | $6,950.68 | $114,903.34 | $71,833.45 |

9. The decisions of the Tax Court set forth the deficiencies in tax and the penalties as follows:

| Year | Income Tax | Penalties |
| --- | --- | --- |
| 1943 | $10,651.56 | $5,325.78 |
| 1944 | $ 6,241.46 | $3,120.73 |
| 1945 | $10,376.02 | $5,188.01 |

10. Form 870–AD is entitled "Offer of Waiver of Restrictions on Assessments and Collection of Deficiency in Tax and of Acceptance of Overassessment."

totaling $62,072.70 [11] plus interest in the amount of $24,077.40 computed from the respective due dates of the 1944 and 1945 income tax returns of Stone to the date of assessment which was August 3, 1956.

Ruderman made payments in complete discharge of his personal and transferee liability. Payment of the $24,077.40 which had been asserted as interest on the transferee liability was made under written protest. On November 9, 1961, Ruderman filed claims for refunds of the payments made on the interest charges and then commenced two actions for refunds which were later consolidated for trial.

■ Ruderman first argues that the government's acceptance of his offer to settle the transferee liability constituted a compromise and settlement or an accord and satisfaction of the total liability under New York law, and thus, no interest charges could be asserted against him. The district court held that "the parties had contemplated the payment of interest as allowed by law" and had not intended the government's acceptance of the Form 870–AD to preclude either further claims by the government or challenges thereto by Ruderman. We agree.

■ United States v. Prince, 348 F.2d 746 (2 Cir. 1965) is authority for the proposition that the nature of the Form 870–AD agreement is a matter of federal rather than state law. We held in Prince that the Form 870–AD is neither a closing agreement nor is it a compromise [12] and that the government may assert further liability subsequent to its acceptance of the Form.

Ruderman's second argument is that "actual fraud," a *sine qua non* to the government's assertion of interest liability, was not shown, and thus the interest charges are not permissible. The district court held that on the basis of the stipulated facts, Ruderman's participation in the fraud as determined by New York law could be inferred and that interest was properly chargeable.

■ Both plaintiff and the government agreed in the district court that the question of whether Ruderman, as transferee, was liable for interest was dependent upon New York law. The government concedes in its brief that it is bound here by that concession with the caveat that it "wishes to leave the issue open for other cases." Accordingly, on the strength of the concession, which we feel constrained to honor, we look to the New York law.

■ The leading New York case is MacIntyre v. State Bank of Albany, 307 N.Y. 630, 120 N.E.2d 832 (1954) which held that, absent actual fraud, interest runs from the time of demand. However, contrary to Ruderman's assertions, actual fraud is not limited to fraudulent conveyances which fall within the definitions of § 276 of New York's Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, but may include transfers which are denoted as "constructively fraudulent" and which fall, for example, within § 273 of the Debtor and Creditor Law or § 15 of the Stock Corporation Law, McKinney's Consol.Laws, c. 59.[13]

11.

| | Income Tax | Penalty | Total |
| --- | --- | --- | --- |
| TOTAL | $36,583.96 | $25,488.74 | $62,072.70 |

12. 26 U.S.C. § 7121 governs the validity of closing agreements and 26 U.S.C. § 7122 governs the validity of compromises.

13. "Debtor-Creditor Law of the State of New York:
Sec. 273. Conveyances by insolvent. Every conveyance made and every obligation incurred by a person who is or

will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.
Sec. 276. Conveyance made with intent to defraud.
Every conveyance made and every obligation incurred with actual intent, as

Ruderman, the president and 50% owner of D. I. Stone, stipulated that the corporation did not record all the purchases and sales in Stone's tax returns for the years 1944 and 1945. We think that the stipulations admitting a scheme to evade the O. P. A. price ceilings and the stipulations admitting a wilful failure to report these transactions in federal income tax returns will support an inference of actual fraud, as that term is used under New York law to determine whether interest will be assessed from the date of the transfer.[14]

Affirmed.

distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

Sec. 15. Prohibited transfers to officers, stockholders, directors or creditors.

No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash."

14. The burden of proof on the issues of fraud penalties and interest liabilities is with the government. United States v. Prince, supra; Paddock v. United States, 280 F.2d 563 (2 Cir. 1960); 26 U.S.C. § 7454. It is of no import that the government based its case solely on facts which were stipulated to before the district court because " * * * [i]f such stipulations establish the Commissioner's burden of proof, he need do no more." Kreps v. C. I. R., 351 F.2d 1 (2 Cir. 1965).