T.C. Memo. 2016-154

UNITED STATES TAX COURT

SALUS MUNDI FOUNDATION, TRANSFEREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent<sup>*</sup>

DIEBOLD FOUNDATION, INC., TRANSFEREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24741-08, 24742-08.          Filed August 15, 2016.

Allen Duane Webber, Mireille R. Oldak, and Parisa J. Manteghi, for

petitioners.

John Richard Mikalchus, Thomas R. Thomas, Frances F. Regan, and Janet

F. Appel, for respondent.

---

<sup>*</sup>This opinion supplements our previously filed opinion <u>Salus Mundi Found.
v. Commissioner</u>, T.C. Memo 2012-61, <u>vacated and remanded sub nom. Diebold
Found., Inc. v. Commissioner</u>, 736 F.3d 172 (2d Cir. 2013), <u>and rev'd and
remanded</u>, 776 F.3d 1010 (9th Cir. 2014).

[*2]                    SUPPLEMENTAL MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  These cases are before the Court on remand from the Court

of Appeals for the Ninth Circuit and the Court of Appeals for the Second Circuit

for further proceedings in accordance with their opinions in <u>Salus Mundi Found.</u>

<u>v. Commissioner</u> (<u>Salus Mundi II</u>), 776 F.3d 1010, 1017 (9th Cir. 2014), <u>rev'g and</u>

<u>remanding</u> T.C. Memo. 2012-61 (<u>Salus Mundi I</u>), and <u>Diebold Found., Inc. v.</u>

<u>Commissioner</u>, 736 F.3d 172, 175 (2d Cir. 2013), <u>vacating and remanding</u> <u>Salus</u>

<u>Mundi Found. v. Commissioner</u>, T.C. Memo. 2012-61, respectively.  The issues

for decision on remand are:  (1) whether Double-D Ranch is liable for tax for the

short taxable year ended July 2, 1999; (2) whether the notices of liability issued to

Salus Mundi Foundation (Salus Mundi) and Diebold Foundation, Inc. (Diebold

Connecticut) (collectively, petitioners), with regard to Double-D Ranch's short

taxable year ended July 2, 1999, were issued within the applicable period of

limitations for assessment under section 6901(c); (3) whether Diebold Foundation,

Inc. (Diebold New York), is a transferee of Double-D Ranch, Inc. (Double-D

Ranch), pursuant to section 6901;[1] (4) whether petitioners are liable as transferees

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

[*3] of a transferee of Double-D Ranch pursuant to section 6901; and (5) whether petitioners are liable for prenotice interest.[2]

## Background

We incorporate our findings in Salus Mundi I and summarize the relevant background for purposes of this opinion.

Petitioners are two section 501(c)(3) private foundations organized in Arizona and Connecticut on October 22 and July 12, 1999, respectively. Petitioners and Ceres Foundation, Inc. (Ceres Foundation),[3] received all of the assets, consisting of cash and marketable securities, of Diebold New York in equal shares pursuant to Diebold New York's "Plan of Dissolution and Distribution of Assets" during Diebold New York's October 31, 2001, taxable year.

Dorothy R. Diebold was the sole beneficiary of the Dorothy R. Diebold Marital Trust (Marital Trust), created upon her husband Richard Diebold's death on June 18, 1996. The trustees of the Marital Trust were Mrs. Diebold, the

---

[2]The issue of whether a penalty applies is moot because the amount petitioners received is far less than the tax liability imposed by respondent against Double-D Ranch. See Gumm v. Commissioner, 93 T.C. 475, 480 (1989), aff'd without published opinion, 933 F.2d 1014 (9th Cir. 1991).

[3]Ceres Foundation, Inc., was the third petitioner in Salus Mundi I. The Internal Revenue Service did not appeal the decision in favor of Ceres Foundation, Inc., to the Court of Appeals for the Fourth Circuit.

**[*4]** Bessemer Trust Co., N.A. (Bessemer Trust), operating primarily through its senior vice president, Austin J. Power, Jr., and Andrew W. Bisset, Mrs. Diebold's personal attorney. Diebold New York was a section 501(c)(3) charitable organization incorporated under the laws of New York in 1963. Its directors were Mrs. Diebold, Mr. Bisset, and Mrs. Diebold's three children.

At the time of the transaction at issue, Double-D Ranch had two shareholders, Diebold New York, holding 2,555 shares, and the Marital Trust, holding 1,280 shares. Double-D Ranch's directors were Mrs. Diebold, her three children, Mr. Bisset, and Mr. Power. The assets of Double-D Ranch consisted primarily of: (1) stock in American Home Products (AHP), a publicly traded company; (2) stock in other publicly traded companies; (3) U.S. Treasury securities; (4) cash; and (5) real estate. The various securities and real estate were highly appreciated.

At some point in May or early June 1999, the cotrustees of the Marital Trust and the directors of Diebold New York decided to sell Double-D Ranch stock. Knowing that the liquidation of Double-D Ranch assets would be likely to generate substantial tax liability, Mr. Power sought a possible solution. Mr. Power was primarily responsible for implementing the sale of the stock. Stephen A. Baxley, a senior vice president in Bessemer Trust's tax department, and Morton

[*5] Grosz, Richard Leder, and Adam Braverman assisted in the sale. Messrs. Grosz, Leder, and Braverman were attorneys at Chadbourne & Parke, LLP (Chadbourne & Parke), a law firm. Messrs. Power, Baxley, Grosz, Leder, and Braverman (collectively, Double-D Ranch representatives) represented Double–D Ranch throughout the stock sale process. Mr. Leder, the tax attorney to the Bessemer Trust, was a well-educated and extremely sophisticated adviser with more than 30 years of experience in 1999. After discussing the sale of Double-D Ranch stock with two potential buyers, Double-D Ranch representatives decided to sell the shares to Shap Acquisition Corp. II (Shap II), an entity created specifically by Sentinel Advisors, LLC (Sentinel), for the sale of Double-D Ranch.

On June 17, 1999, Shap II and the Double-D Ranch shareholders executed a letter of intent confirming the terms of the stock sale. The term sheet, attached to the letter of intent, reflected that Shap II would purchase all issued and outstanding Double-D Ranch stock for cash in an amount equal to the fair market value of the corporation's assets minus an agreed-upon discount. The agreed-upon discount was set equal to 4.5% of the fair market value of the Double-D Ranch assets less Double-D Ranch's tax basis in those assets. On June 25, 1999, Shap II and the Double-D Ranch shareholders executed a stock purchase agreement indicating that the closing for the sale would occur on July 1, 1999.

[*6] Also on June 25, 1999, Morgan Stanley and Shap II entered a contract whereby Shap II agreed to sell Double-D Ranch's securities to Morgan Stanley after the closing date. The agreement was to be executed on July 1, 1999.

On July 1, 1999, the Double-D Ranch shareholders entered into an escrow agreement with Bessemer Trust whereby Bessemer Trust would serve as the shareholders' representative for all matters relating to the stock purchase agreement and an escrow account would be created with Bessemer Trust whereby Bessemer Trust would act as the escrow agent.

The Double-D Ranch shareholders agreed to deposit a portion of the proceeds from the stock sale into the escrow account for the purpose of satisfying any outstanding business obligations of Double-D Ranch that might have existed before the stock sale. Similarly, Shap II agreed to "hold back" $10 million[4] of the stock purchase price and deposit it in the escrow account. The hold-back amount would become payable to the Double-D Ranch shareholders on or before July 9, 1999, subject to any adjustments relating to certain liabilities of Double-D Ranch.

The closing was delayed from July 1 to July 2, 1999, and the stock purchase agreement was amended accordingly. Morgan Stanley agreed to change its settlement date to July 6, 1999, the next business day after July 2, 1999. The

[4]All amounts are rounded to the nearest dollar.

[*7] Marital Trust and Diebold New York sold their Double-D Ranch stock to Shap II for approximately $309 million in cash. Morgan Stanley purchased Double D's securities and Topland Farms purchased Double-D Ranch's real property. Shap II received approximately $319 million from the asset sale. Shap II did not pay any tax on the sale because it claimed losses sufficient to offset the built-in gain. Shap II retained the "hold-back" amount after repaying the loan used to finance the transaction to Rabobank Nederland (Rabobank). On July 9 and 12, 1999, Shap II paid the Marital Trust and Diebold New York the "hold back" amount and additional purchase price adjustments.

Double-D Ranch filed a return for the short taxable year ending July 2, 1999, that was due on October 15, 1999, and was received by the Internal Revenue Service (IRS) on March 20, 2000. Pursuant to its plan of dissolution and distribution of assets effective on January 29, 2001, Diebold New York distributed all of its cash and marketable securities in equal shares to petitioners and the Ceres Foundation, resulting in each petitioner's receiving $32,918,670 from Diebold New York. These transfers were not made in exchange for any property or in satisfaction of an antecedent debt. Mr. Bessemer distributed an additional $5.6 million from the escrow account to the Marital Trust and to each of the successor foundations of Diebold New York on March 26 and April 14, 2004. Petitioners

[*8] each received a total of $623,827 from the escrow account, resulting in a total of $33,542,496 received by each petitioner through the dissolution of Double-D.

On March 10, 2006, respondent issued a notice of deficiency to Double-D Ranch, determining a deficiency in income tax of $81,120,064 and a section 6662 penalty of $16,224,012 for the short taxable year ended on July 2, 1999. Respondent determined that the sale of Double-D Ranch's stock by the Double-D Ranch shareholders to Shap II should not be respected for Federal income tax purposes. Respondent determined that in substance the stock sale was really a sale of Double-D Ranch's assets followed by a liquidating distribution to the Double-D Ranch shareholders. While the notice of deficiency was issued after the expiration of the three-year period of limitations under section 6501(a), respondent contends that the six-year period of limitations under section 6501(e) applies. In any event, Double-D Ranch did not file a petition with this Court, and respondent assessed $81,120,064 in tax liability, $16,224,013 in accuracy related penalties, and $3,171,631 in interest against Double-D Ranch on July 31, 2006.

Respondent could not find any assets of Double-D Ranch from which to collect the assessed liability and determined that any additional efforts to collect from it would be futile.

**[\*9]**    Respondent also determined that petitioners and Ceres Foundation were liable as transferees of a transferee of Double-D Ranch.  On July 11, 2008, respondent issued a notice of liability to both petitioners and Ceres Foundation as transferees of the assets of Diebold New York and Double-D Ranch in the amount of $33,542,496 for the corporate income tax and accrued interest assessed against Double-D Ranch for the taxable year ended on July 2, 1999.  Petitioners and Ceres Foundation timely filed petitions in this Court, and the cases were consolidated and presented to this Court for decision without trial under Rule 122.[5]

This Court ruled for both petitioners and Ceres Foundation, and respondent appealed with respect to Salus Mundi and Diebold Connecticut.  The Court of Appeals for the Second Circuit concluded that Double-D Ranch's shareholders' conduct demonstrated constructive knowledge, collapsed the series of transactions, and found that there was a fraudulent conveyance to Diebold New York under the New York Uniform Fraudulent Conveyance Act (NYUFCA).  The Court of Appeals for the Ninth Circuit adopted the reasoning of the Second Circuit and also found that there was a fraudulent conveyance from Double-D Ranch to

---

[5]The parties agree that the same evidence that was used in Diebold v. Commissioner, T.C. Memo. 2010-238, should be used in the present cases, including the trial testimony.  As a result, under Rule 122, these cases do not require a trial for the submission of evidence.

[*10] Diebold New York under the NYUFCA. The cases were remanded to us to determine (1) whether Diebold New York is a transferee of Double-D Ranch under section 6901, (2) whether petitioners are transferees of a transferee of Double-D Ranch , and (3) whether respondent issued notices of liability and assessed the liability within the statutory period of limitations.

After the Courts of Appeals issued the mandates, we ordered the parties to state their respective positions regarding the issues on remand, and both parties complied. There being no need for trial or further hearing, we review the parties' respective positions in the light of the Courts of Appeals' opinions.

## Discussion

To prevail respondent must prove both that Diebold New York is liable as a transferee of Double-D Ranch under section 6901 and that petitioners are liable as transferees of Diebold New York. Two requirements must be met to impose liability on a transferee: (1) the party must be a transferee under section 6901, and (2) the party must be subject to liability at law or in equity.[6] Diebold Found., Inc. v. Commissioner, 736 F.3d at 184.

Respondent must also prove that petitioners are liable for interest.

---

[6]The Courts of Appeals for the Second and Ninth Circuits found the second requirement satisfied in regard to Diebold New York but did not make such a finding in regard to petitioners.

**[\*11]** Petitioners' main argument is that the transaction occurred on July 6, 1999; therefore it could not have happened during the taxable year ended July 2, 1999. This argument is unavailing. In collapsing the series of transactions, the Court of Appeals for the Second Circuit concluded that, in substance:

> Double D sold its assets and made a liquidating distribution to its Shareholders, which left Double D insolvent--that is, "the present fair salable value of [its] assets [wa]s less than the amount * * * required to pay [its] probable liability on [its] existing debts as they bec[a]me absolute and matured." N.Y. Debt. & Cred. Law § 271. With the liquidating distribution, Double D did not receive anything from the Shareholders in exchange, and thus it is plain that Double D certainly did not receive fair consideration. As such, all three prongs of § 273 have been met: Double D (1) made a conveyance, (2) without fair consideration, (3) that rendered Double D insolvent. * * *

Id., at 190 (alterations in original) (citing N.Y. Debt. & Cred. Law sec. 273, and United States v. McCombs, 30 F.3d 310, 323 (2d Cir. 1994)).

In arguing whether Double-D Ranch actually owed the tax liability respondent determined for its short tax year ended July 2, 1999, petitioners rely on the form of the transaction being respected. They maintain that Double-D Ranch sold the assets on July 6, 1999, and, therefore, the sale could not have occurred during the short taxable year ended July 2, 1999.

Petitioners bear the burden of proof on this matter and offer no arguments additional to the ones discussed infra as to Double-D Ranch's tax liability. See

[*12] sec. 6902(a); Rule 142(d). Petitioners point to nothing in the record that shows that respondent incorrectly determined or improperly assessed Double-D Ranch's tax liability for 1999. The stock purchase agreement was slated to close on July 1, 1999, and Morgan Stanley was to buy Double-D's securities on the same day. The closing date was delayed a day and Morgan Stanley agreed to amend its settlement date until the next business day, July 6, 1999. "On July 2, 1999, both parties to the stock sale of Double D took steps to carry out the transaction." Diebold Found., Inc. v. Commissioner, 736 F.3d at 180.

The series of transactions started on July 2, 1999, and substantial steps were taken to complete the transaction on that day. Since the Court of Appeals collapsed the transaction and treated it as a de facto liquidation to shareholders, we conclude that Double-D Ranch was liable for the unpaid tax for its short tax year ended July 2, 1999.

I. Statute of Limitations

Under the general rule set forth in section 6501(a), the IRS must assess tax or send a notice of deficiency within three years after a return is filed. The limitations period extends to six years under section 6501(e)(1) "[i]f the taxpayer omits from gross income an amount properly includible therein and * * * such amount is in excess of 25% of the amount of gross income stated in the return."

[*13] Respondent issued the notice of deficiency to Double-D Ranch on March 10, 2006, more than three years but less than six years after Double-D Ranch filed its return for the short taxable year ended on July 2, 1999.[7] Thus, the notice is timely with respect to that return only if the six-year limitations period applies.

Petitioners argue that Double-D Ranch could not have underreported its income for the short taxable year ending July 2, 1999, because Double-D Ranch did not sell its assets during the short taxable year. However, the Courts of Appeals for the Second and the Ninth Circuits concluding that the shareholders had constructive knowledge of the transaction, collapsed the transaction, resulting in a liquidating distribution to the shareholders from Double-D Ranch. Petitioners reported gross income of $74,925 for the short tax year ended July 2, 1999. As a result of the Courts of Appeals' holding, petitioners omitted gross income of $231,837,944, an amount more than 25% of their gross income. Therefore, the six-year period of limitations of section 6501(e) applies.

Under section 6901(c)(1), the Commissioner generally must assess transferee liability within one year after expiration of the period of limitations on the transferor. Section 6901(c)(2) provides that, "[i]n the case of the liability of a

---

[7]Double-D Ranch's income tax return for the short taxable year ended July 2, 1999, was due on October 15, 1999, and was received on March 20, 2000.

[*14] transferee of a transferee, within 1 year after the expiration of the period of limitation for assessment against the preceding transferee, but not more than 3 years after the expiration of the period of limitation for assessment against the initial transferor".

There is some debate among the parties regarding the date of expiration of the period of limitations. Respondent contends that the date of expiration for Double-D Ranch is August 17, 2006. Petitioners say the date of expiration is no later than September 15, 2006. Therefore, the date of expiration of the period of limitations for Diebold New York is no later than September 15, 2007. The expiration of the period of limitations for petitioners is no later than September 15, 2008. Accordingly, respondent timely issued the notice of deficiency on March 10, 2006, to Double-D Ranch pursuant to section 6501(e)(1), and subsequent notices of liability to petitioners on July 11, 2008, were also timely pursuant to section 6901(c)(2).

II. Whether Diebold New York Was a Transferee Under Section 6901

For purposes of section 6901, the term "transferee" includes, inter alia, donee, heir, legatee, devisee, distributee, and shareholder of a dissolved corporation. See sec. 6901(h); sec. 301.6901-1(b), Proced. & Admin. Regs. The inquiry regarding transferee liability under section 6901 has two separate and

[*15] independent prongs.  See Salus Mundi II, 776 F.3d at 1018-1019; Diebold Found., Inc. v. Commissioner, 736 F.3d at 184.  After the Court of Appeals found Diebold New York liable as a fraudulent transferee of Double-D Ranch under State law, we must now determine whether it is liable as a transferee under Federal law.

The Court of Appeals for the Ninth Circuit recently held that a court must consider whether to disregard the form of a transaction by which the transfer occurred when determining transferee status for Federal law purposes.  See Slone v. Commissioner, 810 F.3d 599, 605-606 (9th Cir. 2015), vacating and remanding T.C. Memo. 2012-57.  In performing the inquiry, the court must focus "holistically on whether the transaction had any practical economic effects other than the creation of income tax losses."  Id. at 606 (quoting Reddam v. Commissioner, 755 F.3d 1051, 1060 (9th Cir. 2014), aff'g T.C. Memo. 2012-106).

The Courts of Appeals for both the Second and Ninth Circuits have found Diebold New York was a transferee in a transaction that was fraudulent under the NYUFCA.  Further, the transaction had no economic purpose other than the creation of income loss for Double-D Ranch.  On that basis, we find Diebold New York is liable under section 6901 as a transferee of Double-D Ranch.

**[\*16]** III. <u>Whether Petitioners Are Liable as Successor Transferees of Diebold NewYork</u>

Transferee liability may be asserted against a transferee of a transferee. <u>Berliant v. Commissioner</u>, 729 F.2d 496 (7th Cir. 1984), <u>aff'g</u> <u>Magill v. Commissioner</u>, T.C. Memo. 1982-148. The Commissioner may collect unpaid taxes of a transferor of assets from a transferee or a successor transferee of those assets. Sec. 6901(a), (c)(2); <u>Commissioner v. Stern</u>, 357 U.S. 39, 42 (1958); <u>Stansbury v. Commissioner</u>, 104 T.C. 486, 489 (1995), <u>aff'd</u>, 102 F.3d 1088 (10th Cir. 1996). We apply New York law in determining whether petitioners are liable as subsequent transferees, and respondent bears the burden of proof. <u>See</u> secs. 6901(a), 6902; Rule 142.

A. <u>Petitioners' Liability Under State Law</u>

Under N.Y. Debt. & Cred. Law sec. 273 (McKinney 2012) respondent must prove: (1) a conveyance was made; (2) without fair consideration; (3) by a person who was or will be rendered insolvent by the conveyance. <u>McCombs</u>, 30 F.3d at 323. Moreover, a person is insolvent when the "present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. Law sec. 271 (McKinney 2012).

[*17] Diebold New York transferred all of its assets to petitioners pursuant to its plan of dissolution approved by the Supreme Court of the State of New York, leaving itself with no assets. We previously found Diebold New York liable as a transferee of the assets of Double-D Ranch and now find petitioners liable as transferees of a transferee. Therefore, we hold that petitioners are liable under section 6901 as transferees of a transferee.

### 1. Conveyance

Under the NYUFCA, a "'conveyance' includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance." Id. sec. 270. During the taxable year ended October 31, 2001, petitioners received transfers of approximately $33 million each in cash and marketable securities directly from Diebold New York. In 2004 additional transfers totaling $623,827 to each petitioner were made from the escrow account, constructively through Diebold New York. These payments are a conveyance for purposes of N.Y. Debt. & Cred. Law sec. 273.

### 2. Fair Consideration

Under New York law, "fair consideration" is defined as:

**[*18]**      a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

         b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. Debt. & Cred. Law sec. 272; see McCombs, 30 F.3d at 326 (observing that what constitutes fair consideration must be determined on a case-by-case basis).

The parties have stipulated that the conveyances from Diebold New York to petitioners were not made in exchange for any property or in satisfaction of an antecedent debt. Thus, the transfers were not made in exchange for property as a fair equivalent. Thus, the transfers were not made for "fair consideration".

### 3. Insolvency

A person is considered insolvent under the NYUFCA when "the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. Law sec. 271. Under New York law, insolvency of the transferor is presumed when a conveyance is made without fair consideration. United States v. Alfano, 34 F. Supp. 2d 827, 844-845 (E.D.N.Y. 1999). The transferee then has the burden to come forward and show that the transferor had

**[*19]** sufficient assets remaining to pay the debt which existed at the time of conveyance. Sutain v. Commissioner, T.C. Memo. 1979-428; Brown v. Commissioner, T.C. Memo. 1975-120. The parties have stipulated that, after the conveyance of its assets to petitioners and Ceres Foundation, Diebold New York had no assets. Combined with Diebold New York's liability as an initial transferee of Double-D Ranch, the conveyances to petitioners and Ceres Foundation rendered Diebold New York insolvent.

Conveyances were made to petitioners without fair consideration by Diebold New York, which was rendered insolvent by the conveyances. Accordingly, petitioners are liable as transferees of a transferee under New York law.

B. Petitioners' Liability Under Section 6901

As stated supra, under section 6901 the term "transferee" includes, inter alia, donee, heir, legatee, devisee, distributee, and shareholder of a dissolved corporation. See sec. 6901(h); sec. 301.6901-1(b), Proced. & Admin. Regs. The inquiry has two separate and independent prongs. See Salus Mundi II, 776 F.3d at 1018-1019; Diebold Found., Inc. v. Commissioner, 736 F.3d at 184. After finding that the transfers to petitioners were fraudulent under State law, we must now determine whether petitioners are liable under Federal law.

**[\*20]** We found petitioners to be transferees of a transferee under NYUFCA. On that basis, we find petitioners are also liable under section 6901 as transferees of a transferee.

IV. Interest

Interest in transferee liability cases is calculated in accordance with two separate periods--prenotice and postnotice--and, under some circumstances, two separate rates. See generally Estate of Stein v. Commissioner, 37 T.C. 945 (1962). If the transferee received assets worth less than the creditor's claim against the transferor, then the prenotice period is "measured from a point of time that would not be earlier than the date of transfer" up to (but not including) the notice of liability issue date. Lowy v. Commissioner, 35 T.C. 393, 395 (1960). In this instance interest, including its applicable rate, is determined under State law. See id.

Because petitioners, as transferees, received assets worth less than Double-D Ranch's tax liability, New York law must determine the extent to which petitioners are liable for prenotice interest. Under New York law petitioners are liable for prenotice interest only where actual fraud exists. Estate of Stein v. Commissioner, 37 T.C. at 962.

**[*21]** Respondent contends that actual fraud "may include transfers which are denoted as 'constructively fraudulent' and which fall, for example, within § 273." Ruderman v. United States, 355 F.2d 995, 998 (2d Cir. 1966).  Actual fraud has been defined as "the intentional and successful employment of any cunning, deception, or artifice, used to circumvent, cheat, or deceive another."  Nasaba Corp. v. Harfred Realty Corp., 39 N.E.2d 243, 245 (N.Y. 1942) (quoting Bouvier Law Dictionary 1304).  However, we did not find actual fraud in Salus Mundi I, slip op. at 34, and we decline to do so here.  Accordingly, we do not find actual fraud here, and petitioners are not liable for prenotice interest.

V.  Efforts To Collect From Double-D Ranch

We must look to New York law to determine whether the Commissioner has an obligation to pursue all reasonable collection efforts against a transferor before proceeding against a transferee.  See Hagaman v. Commissioner, 100 T.C. 180, 183-184 (1993); Jeffries v. Commissioner, T.C. Memo. 2010-172; Upchurch v. Commissioner, T.C. Memo. 2010-169.  Where "the transferor is hopelessly insolvent, the creditor is not required to take useless steps to collect from the transferor." Zadorkin v. Commissioner, T.C. Memo. 1985-137, 49 T.C.M. (CCH) 1022, 1028 (1985).

**[\*22]** We think respondent did pursue all reasonably necessary collection efforts, and petitioners have not shown that respondent's efforts to collect against Double-D Ranch were not reasonably exhausted. If for the sake of argument we presume that respondent did not take reasonable steps, the NYUFCA does not require a creditor to pursue all reasonable collection efforts against the transferor. See N.Y. Debt. & Cred. Law secs. 270-281. Therefore, respondent was not required to exhaust collection efforts against Double-D Ranch, and petitioners may be held liable.

We conclude that Double-D Ranch was liable for unpaid tax for the short tax year ending July 1999, the notices of liability were timely issued, Diebold New York is a transferee of Double-D Ranch, petitioners are liable as transferees of a transferee of Double-D Ranch, and petitioners are not liable for prenotice interest.

In reaching our holding herein, we have considered all arguments of the parties, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decisions will be entered under

Rule 155.